*In re* TERRY

Docket No. 214617. Submitted December 14, 1999, at Detroit. Decided
    February 29, 2000, at 9:05 A.M.

The Family Independence Agency petitioned the Genesee Circuit
Court, Family Division, for the termination of the parental rights of
Lakia Terry and Tony Corthion in Tony Terry and of Lakia Terry
and Willie Hankston in Sandrea Hankston. The court, Thomas L.
Gadola, J., granted the petition. With respect to Lakia Terry, a
developmentally disabled person, the court found that the condi-
tions that led to the adjudication (i.e., her failure to provide medi-
cal care necessary for the children's health and safety) continued
and were not likely to be rectified within a reasonable time consid-
ering the ages of the children, MCL 712A.19b(3)(c)(i); MSA
27.3178(598.19b)(3)(c)(i), and that without regard to intent, she
failed to provide proper care or custody for the children and there
was no reasonable expectation that she would be able to provide
proper care and custody within a reasonable time considering
the ages of the children, MCL 712A.19b(3)(g); MSA
27.3178(598.19b)(3)(g). Lakia Terry appealed.

The Court of Appeals *held*:

1. The lack of personal service on Tony Corthion of notice of the
proceeding for termination of parental rights did not deprive the
family court of jurisdiction to terminate the parental rights of Lakia
Terry. Because notice to Corthion involves a personal right belong-
ing to him, Lakia Terry lacks standing to argue that service on Cor-
thion was defective. Any deficiency in the service on Corthion
affects only the family court's decision to terminate his parental
rights.

2. The family court did not err in terminating the parental rights
of Lakia Terry. The family court did not err in finding clear and
convincing evidence of the asserted statutory grounds for termina-
tion, and Lakia Terry's failure to meet the burden of going forward
with evidence that termination was not in the children's best inter-
ests obliged the family court to terminate her parental rights.

3. The Americans with Disabilities Act, 42 USC 12101 *et seq.*,
does not apply to proceedings for termination of parental rights.
Such proceedings do not constitute "services, programs, or activi-

ties" within the meaning of 42 USC 12132. A parent may not, as Lakia Terry tried to do in this case, raise violations of the act as a defense to a proceeding for termination of parental rights.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE.

A failure to provide the statutorily required personal service of notice of a proceeding to terminate parental rights on one, but not the other, respondent parent is a jurisdictional defect that renders the proceeding void only with respect to the parent not served (MCL 712A.12; MSA 27.3178[598.12]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — STATUTORY GROUNDS — CHILDREN'S BEST INTERESTS.

A statutory ground for termination of parental rights must be met by clear and convincing evidence; once this is done, the parent against whom termination proceedings were brought has the burden of going forward with some evidence that termination is clearly not in the child's best interests; if no such showing is made, the family court is without discretion; it must terminate parental rights (MCL 712A.19b[5]; MSA 27.3178[598.19b][5]).

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — AMERICANS WITH DISABILITIES ACT.

The Americans with Disabilities Act does not apply to proceedings for termination of parental rights; a parent may not raise alleged violations of the act as a defense to a proceeding for the termination of parental rights (42 USC 12101 *et seq.*).

*Marc T. Dedenbach,* for Lakia Terry.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and KELLY, JJ.

CAVANAGH, P.J. Respondent Lakia Terry appeals as of right the family court order terminating her parental rights to her minor children, Tony Terry and Sandrea Hankston, pursuant to MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i) (conditions that led to adjudication continue to exist and are not likely to be rectified within a reasonable time) and (g) (parent, without regard to intent, fails to provide proper care or custody for the children). We affirm.

Respondent's two children were taken into the court's custody at different times. Tony was removed from respondent's care in November 1996, when he was about 2½ years old. Respondent gave birth to Sandrea in July 1997; Sandrea was removed from respondent's custody in October 1997. Both children were removed as a result of respondent's failure to provide medical care necessary for the children's health and safety, as well as her unstable living situation. In January 1998, petitioner filed its request to terminate respondent's parental rights to both children.

At the June 1998 hearing regarding the petition to terminate respondent's parental rights, evidence was presented that respondent has been diagnosed as developmentally disabled. Christine Rice was respondent's caseworker from June 1996 through April 1997. Rice testified that respondent loved her children, had good intentions, and tried to cooperate. However, respondent did not seem to understand the seriousness of Tony's medical problems or his need for a permanent home. Furthermore, respondent's mental limitations affected her ability to follow through on necessary tasks. For example, respondent often failed to complete the necessary paperwork to obtain funding for housing and furniture within the time required.

Sandrea was placed on an apnea monitor between August 1997 and April 1998. The monitor should have been on the child constantly unless she was being supervised so that any breathing difficulties could be observed. However, while Sandrea was in respondent's care, the monitor was in use only a minimal amount of time. When Wendy Jamrog, Sandrea's caseworker, questioned respondent, the latter admit-

ted that she was not using the monitor on the child. In addition, respondent had not refilled the prescription for Sandrea's medication for a reflux condition that interfered with the child's breathing; respondent would have needed to refill the prescription if she had been giving Sandrea the medication as instructed.

Connie Giguere was the supervisor of the Developmental Disabilities program at Genesee County Community Mental Health (GCCMH). Giguere worked with respondent from the end of January 1997, when respondent requested services, until March 20, 1998. Giguere was aware of respondent's problems in following through with tasks such as finding housing, obtaining furniture, and arranging for utilities to be turned on. Giguere believed that respondent could learn to take care of these things, given time and experience. However, it is not sufficient for someone merely to tell respondent what to do; she needs someone to take her through each step, possibly multiple times. Moreover, whenever there is a change in circumstances, respondent needs help addressing new problems.

At the time of the termination hearing, Giguere thought that the children would be at risk if respondent were to live with them outside a structured, supervised setting. Giguere estimated that it would take respondent an additional two or three years to learn many basic parenting skills. Giguere attributed respondent's deficiencies to the fact that she had been abused as a child and had not had any effective role models on how to be a good parent. Giguere believed that respondent could learn to be more independent, but that she would always need assistance during difficult or stressful periods.

Lynn Caron testified that she was the case manager for the family at Alternatives for Children and Families. Caron stated that both children required asthma treatments four times a day, as well as other medications. Respondent had a history of missing doctor's appointments and failing to fill prescriptions. Caron spoke to respondent about the importance of the medical treatment, but respondent did not seem to comprehend everything. For instance, when Sandrea went off the apnea monitor, respondent became excited because she thought that this meant that she would get the children back.

In November 1997, the children's foster mother allowed respondent to take the children for an outing, and respondent did not return on time. Respondent got into a fight with the foster mother and drove off with Sandrea's apnea monitor in her car. Respondent held on to the monitor for three days; Caron had to go out to respondent's home to convince her to return it. According to Caron, respondent did not understand that the child's need for the monitor involved a life-or-death situation.

Caron described respondent as having limited abilities. Although respondent loved her children, was bonded to them, and had good intentions, Caron did not believe that she was capable of being a good parent or caring for the children's medical needs. When respondent was distracted by other matters, she often forgot about the children's requirements. In addition, while respondent's conduct with Sandrea was appropriate during visits, she usually left it to Caron or the foster mother to discipline Tony and did not seem to understand how to deal with a four-year-old child. Respondent needed someone to live with her, not just

oversee her progress. Caron was not aware of any person, either friend or family member, who could provide respondent the support that she needed.

Respondent testified that she had seldom used Sandrea's monitor because she had held the baby almost constantly, and the doctor had explained that Sandrea only needed to be on the monitor when she was not being supervised. With regard to the November 1997 incident, respondent explained that she did not return the monitor when she dropped off Sandrea because the foster mother threw respondent out of the house and would not let respondent give her the monitor.

Respondent had been prescribed Prozac, and she stated that it helped her to keep focused and accomplish more on her own. She had not taken Prozac while she had been breast feeding Sandrea, but she was back on the medication at the time of the hearing. Respondent had recently obtained a job at McDonald's, and she had been told that she was just as fast a worker as a person without delayed development.

Respondent stated that she had found parenting classes to be beneficial, but she recognized that she needed more classes to help her learn to discipline the children. Respondent was learning how to manage her money and pay bills. Respondent planned to return to school in the fall so that she could obtain her general equivalency diploma (GED). While she was in school, she would place the children in day care, which she would pay for herself from her own earnings. Respondent did not know how much day care would cost.

On September 3, 1998, the family court issued its findings and conclusions on the record. The court

found that respondent's testimony regarding her failure to use Sandrea's apnea monitor for days at a time was not credible and that respondent had endangered the child. The court noted the testimony that respondent required day-to-day assistance in caring for the children and that it would take her "two to three years . . . to learn the basic things that children need." The court concluded that, while respondent loved her children, she did not have the ability to care for them. Accordingly, the family court determined that the statutory grounds for termination of respondent's parental rights had been established under MCL 712A.19b(3)(c)(i) and (g) and that termination of respondent's parental rights was in the children's best interests. The court terminated respondent's parental rights, as well as the parental rights of Tony Corthion (possibly Tony's father) and Willie Hankston (Sandrea's father). The court denied respondent's motion for reconsideration.

I

Respondent contends that the court lacked jurisdiction to terminate her parental rights because Corthion was not properly served with notice of the termination proceedings.[1] Whether a court has personal jurisdiction over a party is a question of law, which this Court reviews de novo. *Poindexter v Poindexter*, 234 Mich App 316, 319; 594 NW2d 76 (1999).

---

[1] Throughout the termination proceedings, there were problems serving respondent Corthion with notice. On September 3, 1998, service by publication for Corthion was completed, and the court issued its findings on the record with regard to all the parties.

A failure to provide notice of a termination proceeding hearing by personal service as required by statute, MCL 712A.12; MSA 27.3178(598.12), is a jurisdictional defect that renders all proceedings in the family court void. *In re Atkins*, 237 Mich App 249, 250-251; 602 NW2d 594 (1999). Nevertheless, we conclude that respondent's argument is without merit. Respondent does not challenge the validity of service on herself, nor does she argue that any defects in the service on Corthion somehow affected her rights. Because notice of the proceedings involves a personal right belonging only to Corthion, respondent lacks standing to argue that service on Corthion was defective. Any deficiency in the service on Corthion affects only the family court's decision to terminate his parental rights.[2] See *In re EP*, 234 Mich App 582, 598; 595 NW2d 167 (1999) ("A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.").

II

Respondent next argues that the family court erred in terminating her parental rights. A two-pronged test applies to a family court's decision to terminate parental rights. First, the court must find that at least

---

[2] Respondent relies on *In re Adair*, 191 Mich App 710, 713-714; 478 NW2d 667 (1991), in which this Court stated, "A failure to provide notice of a hearing by personal service on a noncustodial parent in a termination proceeding as required by statute, MCL 712A.12; MSA 27.3178(598.12), is a jurisdictional defect that renders all proceedings in the probate court void." However, we conclude that the holding of *Adair* is not as broad as respondent contends. In *Adair*, this Court did not hold that the proceedings were void with respect to both parents, but only with respect to the parent who had not been properly served. See *id.* at 715.

one of the statutory grounds for termination set forth in MCL 712A.19b; MSA 27.3178(598.19b) has been met by clear and convincing evidence. *In re Jackson*, 199 Mich App 22, 25; 501 NW2d 182 (1993). This Court reviews the findings of fact under the clearly erroneous standard. MCR 5.974(I); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made. *Jackson, supra* at 25.

Once a statutory ground for termination has been met by clear and convincing evidence, the parent against whom termination proceedings have been brought has the burden of going forward with some evidence that termination is clearly not in the child's best interests. If no such showing is made and a statutory ground for termination has been established, the family court is without discretion; it must terminate parental rights. MCL 712A.19b(5); MSA 27.3178(598.19b)(5); *In re Huisman*, 230 Mich App 372, 384; 584 NW2d 349 (1998).

The family court terminated respondent's parental rights under subsections 19b(3)(c)(i) and (g), which provide:

> The court may terminate the parental rights of a parent to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
>        *     *     *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 days or more have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :
>
> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the condi-

tions will be rectified within a reasonable time considering the age of the child.

*        *        *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child.

The family court specifically stated that respondent is a good person who loves her children and, to the best of her abilities, did everything she could for them. Unfortunately, even though she completed many, if not all, of the goals of her treatment plans, this was still not enough to ensure that the children would be safe in her custody. The witnesses consistently testified that respondent needed full-time assistance in caring for the children. Furthermore, the most optimistic projection was that respondent needed two or three additional years to learn basic parenting skills; such a delay was simply not in the best interests of the children. See *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). We conclude that the family court's findings were not clearly erroneous and that it did not err in terminating respondent's parental rights.

III

Finally, respondent argues that the family court erred in terminating her parental rights because she was not offered appropriate services in light of her disability, which constituted a violation of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.* Whether the ADA has any effect on termination of

parental rights proceedings is an issue of first impression in Michigan and presents a question of law that we review de novo. See *Shurlow v Bonthuis,* 456 Mich 730, 734-735; 576 NW2d 159 (1998).

In enacting the ADA, Congress stated that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 USC 12101(a)(8). With these goals in mind, the ADA provides in pertinent part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. [42 USC 12132.]

A "qualified individual with a disability"

> means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. [42 USC 12131(2).]

Pursuant to 28 CFR 35.104, mental retardation is a "disability" within the meaning of the ADA.

Because the application of the ADA in termination of parental rights proceedings has not previously been addressed by Michigan's appellate courts, we look to other states for guidance. Several courts have concluded that termination proceedings are not "services, programs or activities" under the ADA, and the ADA

does not apply in termination proceedings as a defense to the termination of parental rights.[3] See *In re Antony B*, 54 Conn App 463, 472; 735 A2d 893 (1999); *State of Louisiana in re BKF*, 704 So 2d 314, 317-318 (La App, 1997); *In re BS*, 166 Vt 345, 350-355; 693 A2d 716 (1997); see also *Stone v Daviess Co Div of Children & Family Services*, 656 NE2d 824 (Ind App, 1995); *In re Torrance P*, 187 Wis 2d 10, 15; 522 NW2d 243 (1994). We agree that termination of parental rights proceedings do not constitute "services, programs or activities" within the meaning of 42 USC 12132. Accordingly, we hold that a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings.

Nevertheless, the ADA does require a public agency, such as the Family Independence Agency (FIA), to make reasonable accommodations for those individuals with disabilities so that all persons may receive the benefits of public programs and services. Thus, the reunification services and programs provided by the FIA must comply with the ADA.[4] However, in the context of the present case, we discern no conflict between the ADA and Michigan's Juvenile Code. Under MCL 712A.18f(4); MSA 27.3178(598.18f)(4), before

---

[3] The Texas Court of Appeals has held that the ADA may be raised as an affirmative defense that is waived if not pleaded. *In re CM*, 996 SW2d 269, 270 (Tx App, 1999). Other courts have simply addressed any argument regarding the ADA by determining whether the services offered to the parents were consistent with the purposes behind the ADA and offered the parents a reasonable opportunity to correct parenting deficiencies. See, e.g., *JT v Arkansas Dep't of Human Services*, 329 Ark 243, 254-258; 947 SW2d 761 (1997); *In re CM*, 526 NW2d 562, 566 (Iowa App, 1994); *In re Angel B*, 659 A2d 277, 279 (Me, 1995); *In re Welfare of AJR*, 78 Wash App 222, 229-230; 896 P2d 1298 (1995).

[4] Services are not mandated in all situations, but MCL 712A.18f(1)(b); MSA 27.3178(598.18f)(1)(b) requires petitioner to justify a decision not to provide services to a particular family.

entering an order of disposition, the court must determine whether the FIA has made "reasonable efforts" to rectify the conditions that led to its involvement in the case. Thus, the state legislative requirement that the FIA make reasonable efforts to reunite a family is consistent with the ADA's directive that disabilities be reasonably accommodated. In other words, if the FIA fails to take into account the parents' limitations or disabilities and make any reasonable accommodations, then it cannot be found that reasonable efforts were made to reunite the family.

Any claim that the FIA is violating the ADA must be raised in a timely manner, however, so that any reasonable accommodations can be made. Accordingly, if a parent believes that the FIA is unreasonably refusing to accommodate a disability, the parent should claim a violation of her rights under the ADA, either when a service plan is adopted or soon afterward. The court may then address the parent's claim under the ADA. Where a disabled person fails to make a timely claim that the services provided are inadequate to her particular needs, she may not argue that petitioner failed to comply with the ADA at a dispositional hearing regarding whether to terminate her parental rights. In such a case, her sole remedy is to commence a separate action for discrimination under the ADA. At the dispositional hearing, the family court's task is to determine, as a question of fact, whether petitioner made reasonable efforts to reunite the family, without reference to the ADA.[5]

---

[5] Any claim that the parent's rights under the ADA were violated must be raised well before a dispositional hearing regarding whether to terminate her parental rights, and the failure to timely raise the issue constitutes a waiver. The focus at the dispositional hearing must be on the parent's

In the present case, respondent did not raise a challenge to the nature of the services or accommodations offered until her closing argument at the hearing regarding the petition to terminate her parental rights. This was too late in the proceedings to raise the issue. The time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights.

Even if respondent had timely raised this issue, the record does not support her claim that petitioner did not reasonably accommodate her disability. It is undisputed that respondent was provided with extensive services, and there is no evidence that she was denied any services that are available to parents with greater cognitive abilities. The caseworkers were aware of respondent's intellectual limitations and would repeat instructions multiple times and remind her when tasks had to be completed. Respondent received assistance through GCCMH to address both personal and parenting problems in a program that was tailored to developmentally disabled persons. An arrangement under which respondent lived in the children's foster home was attempted but proved unsuccessful. Petitioner had no other services available that would address respondent's deficiencies while allowing her to keep her children. The ADA does not require petitioner to provide respondent with full-

---

rights to the child and the best interests of the child under the Juvenile Code, and the parties and the court should not allow themselves to be distracted by arguments regarding the parent's rights under the ADA. Given that the court must consider whether reasonable efforts were made to reunite the family, precluding specific reference to the ADA at the dispositional hearing is not likely to make any difference in terms of the outcome.

time, live-in assistance with her children. See *Bartell v Lohiser*, 12 F Supp 2d 640, 650 (ED Mich, 1998).

Respondent's contention that she needed even more assistance from petitioner to properly care for her children merely provides additional support for the family court's decision to terminate her parental rights. Cf. *id.* After her children have come within the jurisdiction of the family court, a parent, whether disabled or not, must demonstrate that she can meet their basic needs before they will be returned to her care. "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *In re AP*, ___ Pa Super ___; 728 A2d 375, 379 (1999).

Affirmed.