# STATE OF MICHIGAN

# COURT OF APPEALS

In re DETTY/MEDRANO, Minors.

UNPUBLISHED
August 23, 2016

No. 331131
Isabella Circuit Court
Family Division
LC No. 15-000013-NA

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right from an order terminating her parental rights to her children, JDM, JJD, and AFD, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm).[1] We affirm.

## I. FACTS

This case began after a domestic violence incident between respondent and AFD in January 2015. Respondent claims that AFD "threaten[ed] to kill [her] and stab[bed] her in the leg with a piece of glass." Department of Health and Human Services (DHHS) child protective services investigator Stephanie Smith explained that following the incident, AFD had "pretty serious injuries" that included "bruising on the side of his face and all through his hairline," "bruises inside of his ears," "bruising on his cheekbone underneath his left eye," and possibly "head trauma." The DHHS petitioned for the children's removal soon thereafter. The trial court authorized the petition, found that reasonable efforts were made to prevent the children's removal, and placed them under DHHS supervision.

On February 6, 2015, Patrick Ryan, Ph.D., conducted a psychological evaluation of respondent, and diagnosed her as suffering from major depression, generalized anxiety disorder, and "Cluster B personality disorder (aggressive and unpredictable)." Ryan reported that

---

[1] The trial court did not terminate respondent's parental rights to her son, DAT, because it found that termination was not in his best interests.

-1-

respondent indicated she was taking a mood stabilizer, an antidepressant, and pain medication. Ryan did not believe that respondent's depression or anxiety disorder were being "fully or adequately treated." Ryan believed that respondent would "require significant intervention." Ryan explained that respondent needed to first "get[ her] psychiatric issues . . . controlled," and then to "relearn some of the skills that [she] may not have acquired [due to] her own difficulty in childhood." Ryan believed respondent could achieve both through "a combination of medication and good counseling" that would have "an additive effect" and allow respondent to receive "maximum benefit."

After respondent pleaded to jurisdiction, the DHHS developed a multi-objective parent-agency treatment (PAT) plan. First, respondent was to "refrain from abusing drugs and alcohol." To achieve this goal, respondent was to "participate in random drug and alcohol screens" and "participate in counseling at Addiction Solutions," while "attend[ing all] . . . scheduled appointment[s]" and "follow[ing] the recommendations of the staff." Second, respondent was required to "utilize healthy and appropriate patenting skills." Respondent was to participate in parenting classes at the Child and Family Enrichment Council (CAFÉ), "follow the recommendations of the . . . instructors," and "successfully complete [the] class" to achieve this goal. Additionally, respondent was to "work with [an] AOI Parenting Coach," "attend all scheduled appointments," and "follow the recommendations." Third, respondent was to "know how to appropriate[ly] handle her children's needs." To achieve this goal, respondent was to participate in the CAFÉ parenting classes and work with the AOI Parenting Coach. Fourth, respondent was to address her decreased ability to read and write by "inform[ing] her service providers when she does not understand or comprehend something" and "request[ing] documentation [be] read to her." Fifth, respondent was to attain emotional stability. To achieve this goal, respondent was to "participate in individual therapy," "attend all scheduled appointments," and "follow the recommendations of the therapist." Respondent had limited success with achieving these objectives. Her compliance with the many services provided was mixed, at best. The DHHS offered respondent additional services as the case progressed, but again her compliance with the services provided, and the benefit she received, was mixed.

The trial court held a three-day termination hearing beginning in December 2015. At the hearing, Ryan and DHHS caseworker Vanessa Birch opined that, if she complied with services, it would take respondent at least an additional year of services to have the children returned to her care. Multiple service providers recommended that termination of respondent's parental rights with respect to the children was in each child's best interests. The trial court concluded that the statutory grounds to terminate respondent's parental rights had been established and that termination was in the best interests of each child.

## II. ANALYSIS

### A. REASONABLE EFFORTS

On appeal, respondent argues that DHHS failed to provide reasonable efforts to reunify her with her children. But parents must object to services offered "when the [trial] court adopts a service plan." *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). "[F]ailure to timely raise the issue constitutes a waiver." *Id.* at 26 n 5. Respondent did not object to the services

offered when the trial court adopted the service plan. Instead, respondent "agree[d] with the recommendations and services in place" and then simply requested additional time to comply. Therefore, respondent waived the issue. *Id*.

Even if respondent had not waived this issue, it lacks merit. Before a petitioner may seek termination of parental rights, the petitioner generally must make reasonable efforts to reunite parent and child. MCL 712A.19a(2); *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013). Specifically, the petitioner must "make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4). But a petitioner's responsibility to provide services is matched by a respondent's attendant responsibility to take advantage of and benefit from services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Respondent did not do so. The DHHS made reasonable efforts to reunify respondent with her children by putting in place services that were sufficiently tailored to address respondent's needs. *In re Hicks/Brown, Minors*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 328870); slip op at 11, 15. The only failure evidenced in the record is respondent's failure to take full advantage of the services provided.

## B. BEST INTERESTS

Respondent also argues that termination of her parental rights was not in her children's best interests. To terminate parental rights, the trial court must find by a preponderance of evidence that termination is in a child's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App at 89. The trial court must evaluate each child's best interests individually. *In re Olive/Metts*, 297 Mich App at 42. Factors include: a child's bond to the parent; parenting ability; a child's need for permanency, stability, and finality; and a comparison between the parent's home and a child's foster home. *Id*. at 41-42. "Other considerations include the length of time [a] child was in care [and] the likelihood that 'the child could be returned to her parents' home within the foreseeable future, if at all.' " *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), quoting *In re Frey,* 297 Mich App at 248-249. Further, "[t]he trial court may . . . consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child[ren], the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).

When the children's erratic behavior while in respondent's care is juxtaposed with the improvements seen when they were not in her care, it is clear that the environment in which they had been living was toxic to them. And respondent demonstrated an inability to confront and successfully address the issues with her lifestyle and personal makeup that fostered that poor environment. Her repeated failures to attend to counseling, to provide consistent and clean drug tests, and to make strides toward creating a financially stable home for the children show that she is either unwilling to put the needs of the children above her own immediate wants and desires,

or she is unable to make the changes necessary to ensure that they will be properly cared for if under her charge.  In either event, termination was in the bests interests of each child.[2]

Affirmed.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[2] Respondent makes oblique references in her brief on appeal to the court's findings on the statutory grounds.  Because the question is not directly posed, or supported, we will not entertain it.