# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

*In re* HICKS

Docket No. 153786. Argued on application for leave to appeal December 7, 2016. Decided May 8, 2017.

The Department of Health and Human Services (the Department) petitioned the Wayne Circuit Court, Family Division, to terminate the parental rights of respondent, a person with an intellectual disability. The proceedings began on January 29, 2013, when the court took jurisdiction over respondent's infant daughter and instituted a service plan provided by the Department. Respondent gave birth to a son in February 2013, and the court took jurisdiction over him as well. For most of 2013, respondent appeared to have inconsistently participated in the services required by the plan, but respondent's attorney later alleged that the services did not meet respondent's needs. At a January 2014 hearing, respondent's attorney asked how respondent could obtain more individualized assistance, and on at least five occasions between August 2014 and the trial for termination of parental rights in July 2015, respondent's attorney asked about the Department's efforts to ensure that respondent was receiving services that accommodated her intellectual disability. Respondent's attorney had specifically requested services through a community mental health agency called the Neighborhood Service Organization (NSO), and the court ordered the Department to assist respondent in obtaining the requested NSO services; however, respondent never received these court-ordered services. On July 27, 2015, the court, Christopher D. Dingell, J., terminated respondent's parental rights to the two children, concluding that two grounds for termination were established and that termination was in the children's best interests. Respondent appealed in the Court of Appeals, arguing that the Department's reunification efforts had failed to accommodate her intellectual disability and that this failure should have prevented the termination of her parental rights. The Department and the children's lawyer-guardian ad litem argued that respondent did not timely raise the disability-based objection because *In re Terry*, 240 Mich App 14, 26 (2000), required that respondent raise the objection when the service plan was adopted or soon afterward. The Court of Appeals, GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ., held that respondent had preserved her claim by objecting sufficiently in advance of the termination proceedings and that the termination order was premature because the Department had failed to provide respondent with reasonable accommodations and thus had failed to make reasonable efforts to reunify the family unit. 315 Mich App 251 (2016). The children's lawyer-guardian ad litem sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 499 Mich 982 (2016).

In a unanimous opinion by Justice LARSEN, the Supreme Court *held*:

1. Under Michigan's Probate Code, MCL 710.21 *et seq*., the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. As part of these reasonable efforts, the Department must create a service plan outlining the steps that both the Department and the parent will take to rectify the issues that led to court involvement and to achieve reunification. Under the Americans with Disabilities Act (ADA), 42 USC 12132, the Department also has an obligation to ensure that no qualified individual with a disability is excluded from participation in or denied the benefits of the services of the Department. Additionally, under 28 CFR 35.130(b)(7) (2016), the Department must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability unless the modifications would fundamentally alter the services provided. Absent reasonable modifications to the services or programs offered to a parent with a disability, the Department has failed in its duty under the ADA to reasonably accommodate a disability and thus has failed to comport with the requirement in MCL 712A.18f(3)(d) that the Department offer services designed to facilitate the child's return to his or her home, resulting in the Department's failure to make reasonable efforts at reunification under MCL 712A.19a(2). Efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA. However, before the Department can be required under the ADA to provide reasonable accommodations, the Department must have knowledge that the individual has a disability. In this case, it was clear that the Department had knowledge of respondent's disability; the record showed that the Department had knowledge of respondent's disability since at least January 2013. Therefore, the Department was required under the ADA to provide reasonable accommodations for respondent. Respondent's attorney had specifically requested services through the NSO, and the circuit court ordered that the Department provide those services for respondent, but the services were never provided. The circuit court erred by concluding that the Department had made reasonable efforts at reunification because the court did not conduct a complete analysis of whether reasonable efforts were made: the court did not consider the fact that the Department had failed to provide the court-ordered NSO services, nor did the court consider whether, despite this failing, the Department's efforts nonetheless complied with its statutory obligations to reasonably accommodate respondent's disability. The Court of Appeals correctly determined that termination of respondent's parental rights was improper without a finding of reasonable efforts. Remand was necessary for an analysis of whether the Department reasonably accommodated respondent's disability as part of its reunification efforts in light of the fact that respondent never received the court-ordered services.

2. With regard to the Department's argument that respondent did not timely raise the disability-based objection, neither the Department nor the children's lawyer-guardian ad litem raised a timeliness concern in the circuit court, and the circuit court did not find the request untimely because the court granted the request and ordered the Department to assist respondent in obtaining the requested services. Therefore, there was no occasion to decide whether the objection was timely.

3. The portion of the Court of Appeals' opinion outlining steps that courts and the Department "must" complete "when faced with a parent with a *known or suspected* intellectual,

cognitive, or developmental impairment" was vacated because those steps would not necessarily be implicated in every disability case and because trial courts are in the best position to determine whether the steps taken by the Department in individual cases are reasonable.

Affirmed in part; vacated in part; case remanded to the Wayne Circuit Court for further proceedings.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

FILED May 8, 2017

STATE OF MICHIGAN

SUPREME COURT

*In re* HICKS/BROWN, Minors.

No. 153786

BEFORE THE ENTIRE BENCH

LARSEN, J.

Respondent Brown is an intellectually disabled person whose parental rights to two children were terminated. Before a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq.*, requires a finding that the Department of Health and Human Services (the Department) has made reasonable efforts at family reunification. Brown argues that the Department's efforts at family reunification were not reasonable because they failed to reasonably accommodate her disability. This case presents two questions: whether Brown timely raised her claim for accommodation before the circuit court, and if so, whether the Department's efforts at family reunification were reasonable. For the reasons stated, we affirm in part the

judgment of the Court of Appeals, vacate in part the opinion of the Court of Appeals, and remand this case to the Wayne Circuit Court for further proceedings consistent with this opinion.

I

In April 2012, respondent Brown brought her infant daughter to the Department, stating that she could not care for her. On April 10, the Wayne Circuit Court granted the Department's motion to place the child in protective custody. The court took jurisdiction over the daughter on January 29, 2013, and instituted a service plan provided by the Department.[1] At the time, Brown was pregnant with a son. After he was born in February 2013, the court took jurisdiction over him as well.

For most of 2013, Brown appears to have inconsistently participated in the services required by the plan, but her attorney later argued that the services did not meet her needs. At a January 2014 hearing, Brown's attorney asked how her client could obtain more individualized assistance. On at least five occasions between August 2014 and the trial for termination of parental rights in July 2015, Brown's attorney inquired about the Department's efforts to ensure that her client receive services through a

---

[1] The plan required Brown to participate in and benefit from parenting classes, attend individual counseling sessions, visit her daughter in a supervised setting, remain in regular contact with the Department, complete high school or obtain a GED, find a suitable home, find a legal source of income, and attend a clinic that would evaluate her sociological and psychological ability to care for a child. The Department's treatment plan included a goal that Brown would "obtain the intellectual capacity to fully be able to care for herself and her daughter."

community mental health agency called the Neighborhood Services Organization (NSO) to accommodate her intellectual disability. Brown never received these services.

On June 18, 2015, the Department filed a petition to terminate Brown's parental rights to both children, alleging three grounds for termination.[2] On July 27, 2015, the circuit court granted the petition, finding that two grounds for termination had been established[3] and that termination was in the children's best interests.

Brown sought relief in the Court of Appeals, arguing that the Department's reunification efforts had failed to accommodate her intellectual disability as required by the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, and that this failure should have prevented the termination of her parental rights. The Department and the children's lawyer-guardian ad litem argued that Brown had waived any claim stemming from her disability because she had not raised her objection "when [the] service plan [was] adopted or soon afterward." See *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). The Court of Appeals panel rejected this argument, holding that Brown had preserved her claim by objecting sufficiently in advance of the termination proceedings to comply with *Terry*'s preservation requirements. *In re Hicks*, 315 Mich App 251, 269-

---

[2] The petition alleged that (1) the conditions leading to adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time, MCL 712A.19b(3)(c)(*i*); (2) respondent failed to provide proper care or custody for the children, and there was no reasonable expectation that she would be able to provide proper care or custody within a reasonable time, MCL 712A.19b(3)(g); and (3) there was a reasonable likelihood that the children would be harmed if returned to the home of respondent, MCL 712A.19b(3)(j).

[3] The judge found grounds for termination under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(g). The judge did not rule regarding MCL 712A.19b(3)(j).

271; 890 NW2d 696 (2016). On the merits, the panel concluded that because "the case service plan never included reasonable accommodations to provide respondent a meaningful opportunity to benefit," the Department had "failed in its statutory duty to make reasonable efforts to reunify the family unit." *Id*. at 255. Any termination order was therefore premature. *Id*. at 286.

The children's lawyer-guardian ad litem sought leave to appeal in this Court. We ordered oral argument on the application. *In re Hicks/Brown*, 499 Mich 982 (2016).

II

Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2).[4] As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home").

The Department also has obligations under the ADA that dovetail with its obligations under the Probate Code. Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132.

---

[4] There are certain enumerated exceptions to this rule, see MCL 712A.19a(2), none of which apply to this case.

4

Public entities, such as the Department, must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service" provided. 28 CFR 35.130(b)(7) (2016).

Absent reasonable modifications to the services or programs offered to a disabled parent, the Department has failed in its duty under the ADA to reasonably accommodate a disability. In turn, the Department has failed in its duty under the Probate Code to offer services designed to facilitate the child's return to his or her home, see MCL 712A.18f(3)(d), and has, therefore, failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2). As a result, we conclude that efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA. The Department seems to agree. See the Department's Supplemental Brief, p 19, quoting Michigan Department of Health and Human Services, *Children's Foster Care Manual*, FOM 722-06F (2016) ("[W]here a parent is suffering from a disability, the Department recognizes as a matter of policy and federal law that it must 'make all programs and services available and fully accessible to persons with disabilities.' . . . [I]n a case with a disabled parent, the Department's obligation to make reasonable accommodations for the disabled parent will be a part of the statutory duty to make 'reasonable efforts' unless one of the enumerated exceptions apply.").

The Department, of course, cannot accommodate a disability of which it is unaware. See *Robertson v Las Animas Co Sheriff's Dep't*, 500 F3d 1185, 1196 (CA 10, 2007) ("[B]efore a public entity can be required under the ADA to provide [reasonable

5

accommodations], the entity must have knowledge that the individual is disabled, either because that disability is obvious or because that individual (or someone else) has informed the entity of the disability."). In the instant case, however, it is clear that the Department knew of Brown's disability.[5] Once the Department knew of the disability, its affirmative duty to make reasonable efforts at reunification meant that it could not be "passive in [its] approach . . . as far as the provision of accommodations is concerned." *Pierce v Dist of Columbia*, 128 F Supp 3d 250, 269 (D DC, 2015).[6]

---

[5] The Department's January 2013 treatment plan included a goal that Brown would "obtain the intellectual capacity to fully be able to care for herself and her daughter." At a preliminary hearing the following month, a Department caseworker observed that Brown had barriers to overcome, including emotional and cognitive impairments. The Department's initial service plan in her son's case, dated March 2013, noted that Brown "appear[ed] to have some intellectual impairments" and that she struggled to understand complex tasks and terms. A functional assessment conducted in April 2013 by the Wayne County Department of Children and Family Services concluded that Brown had a "moderate to severe" cognitive performance problem, noting that she had impaired judgment. And a psychological assessment conducted the following month described Brown's "immediately observ[able]" cognitive defects and reported that she had an IQ of 70, within the borderline of intellectual functioning. A court-ordered psychiatric evaluation concluded, in an apparent recognition of Brown's cognitive disability, that she could benefit from receiving services through a community mental health agency. Thus, the record shows that the Department had knowledge of Brown's disability since at least January 2013.

[6] We agree with the Court of Appeals that the Department had an affirmative duty to accommodate Brown's disability. We disagree, however, with its prescription of steps that courts and the Department "must" complete "when faced with a parent with *a known or suspected* intellectual, cognitive, or developmental impairment." *In re Hicks*, 315 Mich App at 281-282. While the Court of Appeals reasonably identified measures the Department should consider when determining how to reasonably accommodate a disabled individual, we do not believe these steps will necessarily be implicated in every disability case. Trial courts are in the best position, in the first instance, to determine whether the steps taken by the Department in individual cases are reasonable. Accordingly, we vacate this portion of the Court of Appeals' opinion.

The Department and the children's lawyer-guardian ad litem argue that Brown did not timely raise in the circuit court her disability-based objection and that she has therefore forfeited that argument on appeal. Relying on dictum in *Terry*,[7] they argue that objections to a service plan are always untimely if not raised "either when a service plan is adopted or soon afterward." *Terry*, 240 Mich App at 26. With the exception of the panel below, the Court of Appeals has treated this language as the rule since the *Terry* decision.[8] While skeptical of this categorical rule,[9] we have no occasion to decide whether the objection in this case was timely because neither the Department nor the children's lawyer-guardian ad litem raised a timeliness concern in the circuit court.

Brown's counsel argued at a hearing held over a year after adoption of the initial service plan—but roughly 11 months before the termination hearing—that the services offered by the Department did not sufficiently accommodate her client's intellectual

---

[7] *Terry*'s holding with respect to timeliness was that the objection in that case came too late because the objection was not raised until closing arguments at the hearing to terminate parental rights. See *Terry*, 240 Mich App at 27 ("In the present case, respondent did not raise a challenge to the nature of the services or accommodations offered until her closing argument at the hearing regarding the petition to terminate her parental rights. This was too late in the proceedings to raise the issue.").

[8] See, e.g., *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012); *In re Hawkins*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2016 (Docket No. 332957), p 6.

[9] Certainly, a service plan deficient on its face should produce an immediate objection. But it will not always be apparent at the time a service plan is adopted, or even soon afterward, that the service plan is insufficient, either in design or execution, to reasonably accommodate a parent's disability. This is perhaps especially true with respect to intellectual disabilities, which may present in subtle ways and require fine-tuned, albeit reasonable, accommodations.

7

disability. She specifically requested services through the NSO—services that she argued would provide support for Brown's disability. The Department did not object to counsel's request as untimely; nor, apparently, did the circuit court find the request untimely because the court granted the request and ordered the Department to assist Brown in obtaining the requested services. The Department registered no objection when the NSO services were discussed at four subsequent hearings, instead explaining its attempts (and failures) to provide Brown with the court-ordered services. In short, the Department and the circuit court operated as if Brown's request had been timely; the Department cannot now complain otherwise.[10]

Despite the recommendations of the Department's medical professionals that Brown could benefit from services tailored to her disability through an organization such as the NSO, and despite the Department's failure to provide those court-ordered services, the circuit court nonetheless concluded that the Department had made reasonable efforts at reunification and terminated Brown's parental rights. The circuit court seemed not to have considered the fact that the Department had failed to provide the specific services the court had ordered to accommodate Brown's intellectual disability; nor did it consider whether, despite this failing, the Department's efforts nonetheless complied with its statutory obligations to reasonably accommodate Brown's disability. This was error. As stated earlier, efforts at reunification cannot be reasonable under the Probate Code unless

---

[10] The lawyer-guardian ad litem participated in the circuit court proceedings but similarly raised no objection to the timing of the request.

8

the Department modifies its services as reasonably necessary to accommodate a parent's disability. And termination is improper without a finding of reasonable efforts.

Accordingly, we vacate the termination order, which was predicated on an incomplete analysis of whether reasonable efforts were made, and remand to the circuit court for further proceedings. On remand, the circuit court should consider whether the Department reasonably accommodated Brown's disability as part of its reunification efforts in light of the fact that Brown never received the court-ordered NSO services.[11]

For the reasons stated in this opinion, we affirm in part the judgment of the Court of Appeals, vacate in part the Court of Appeals' opinion, and remand to the Wayne Circuit Court for further proceedings consistent with this opinion.

Joan L. Larsen
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

---

[11] The Department argues that, even if it failed to make reasonable efforts at reunification, we should still reverse the Court of Appeals because the circuit court concluded, as an independent ground for termination, that Brown lacked the motivation to be reunited with her children. This argument sits uncomfortably with the Department's concession in its brief before this Court that "[w]here the Department fails to [make reasonable accommodations for a disabled parent], this failure will ordinarily foreclose the Department's ability to prove that the grounds for termination were established." The circuit court's reasonable-efforts determination in this case was incomplete. Remand is, therefore, the only proper course.

9