*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ROSENBROCK, Minors.

UNPUBLISHED
April 24, 2026
10:08 AM

No. 375929
Bay Circuit Court
Family Division
LC No. 23-013557-NA

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order that terminated her parental rights to two of her minor children. We affirm.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services, moved to take custody of the minor children because of respondent-mother's mental health issues and ongoing domestic violence between her and respondent-father.[1] One domestic violence incident put both minor children at risk of harm. Respondent-mother was institutionalized for mental health issues and respondent-father was arrested after that incident. The children were removed from the home and placed in foster care.

The trial court found that respondent-mother's barriers to reunification were her housing, emotional stability, domestic violence, and parenting education. The court ordered respondent-mother to obtain a psychological evaluation and to participate in, and benefit from the recommendations in her case service plan, her parent action treatment plan, and her psychological evaluation. The psychological evaluation determined that, while respondent-mother struggled with reading, she did not have clinically significant cognitive impairment. The psychological evaluation recommended therapy, a substance abuse treatment program for cannabis use disorder, a domestic violence support group, and parenting classes. Information related to these support

---

[1] Respondent-father's parental rights to the two children at issue in this case were also terminated, and respondent-father is not a party to this appeal.

treatments and groups were to be provided verbally or through interactive methods rather than relying heavily on written materials. The psychological evaluation also recommended that respondent-mother use professionals that were "experienced in dealing with clients with learning disabilities."

The trial court held regular dispositional review hearings, and it initially found that respondent-mother had made some progress. Respondent-mother had taken psychiatric medications, attended counseling, and attended a parenting class. The caseworker, however, was concerned that respondent-mother had not stopped using marijuana, seemed overwhelmed during parenting time, had not signed up for a domestic violence support group, and was hostile toward participating in services.

At one of her dispositional hearings, respondent-mother argued that her diagnoses rose to the level of a disability under the Americans with Disabilities Act (ADA), and she asked that future services accommodate that disability. A new caseworker was assigned to respondent-mother's case, who offered to come to respondent-mother's home in person and help her to sign up for services. However, respondent-mother never asked for any accommodations from the new caseworker. Respondent-mother stopped going to therapy regularly, did not attend any additional parenting classes, stopped taking her psychiatric medication, and continued to exhibit inappropriate behavior during parenting time, which included giving the children tablets and ignoring them while she argued in front of them.

Petitioner filed a supplemental petition to terminate respondent-mother's parental rights after respondent-mother did not show progress for several dispositional review periods. A termination hearing was scheduled but was delayed after respondent-mother was arrested for resisting police officers who were attempting to remove her youngest child[2] from her care in a separate child-protective proceeding. Respondent-mother's parenting time with the two children at issue in this case was suspended following the incident.

The termination hearing was held over three days. Respondent-mother's therapist testified that she was aware of respondent-mother's diagnoses and kept them in mind during her treatment, but she felt that respondent-mother's mental health diagnoses did not rise to the level of a disability. The new caseworker testified that respondent-mother never asked for assistance with her reunification services. Respondent-mother testified that she could not think of any specific instance where she felt she needed an accommodation and an accommodation was not provided. When asked if she continued to "pick and choose" what treatment advice to follow, respondent-mother admitted that she only "follow[ed] certain things" but tried her "best to hear everybody out." Thereafter, the trial court terminated respondent-mother's parental rights to the children.

This appeal followed.

---

[2] Respondent-mother had another child during the pendency of this case, and respondent-mother's parental rights to that child is not at issue in this appeal.

## II.  ANALYSIS

### A.  REASONABLE EFFORTS

Respondent-mother first argues that the trial court erred when it found that petitioner made reasonable efforts toward reunification because petitioner did not accommodate respondent-mother's disability in providing services.  We disagree with respondent-mother.

The petitioner in a child-protective proceeding "has a statutory duty to make reasonable efforts to reunify" a child and the child's family, which includes creating "a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and achieve reunification."  *In re Atchley*, 341 Mich App 332, 338-339; 990 NW2d 685 (2022) (quotation marks and citation omitted).  However, respondents also have a "commensurate responsibility . . . to participate in the services that are offered," which means participating in and "demonstrat[ing] that they sufficiently benefited from the services provided."  *Id*. at 339 (quotation marks and citation omitted).  Reunification services must comply with the ADA.  *In re Terry*, 240 Mich App 14, 25; 610 NW2d 563 (2000).  The Legislature's "requirement that [petitioners] make reasonable efforts to reunite a family is consistent with the ADA's directive that disabilities be reasonably accommodated."  *Id.* at 26.  Thus, if a petitioner "fails to take into account the parents' limitations or disabilities and make any reasonable accommodations, then it cannot be found that reasonable efforts were made to reunite the family."  *Id*.

We review "for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondents with the child."  *In re Atchley*, 341 Mich App at 338.  "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made."  *Id*. (quotation marks and citation omitted).

In this case, the few services and service providers that respondent-mother chose to engage with were aware of her need for accommodations, and, by respondent-mother's own admission, were satisfactory.  Respondent-mother, however, did not participate in the majority of the services that she was offered.  Specifically, respondent-mother did not get her court-ordered substance abuse evaluation, only completed a single parenting class program, did not participate in a domestic violence support group, did not follow up with a psychiatrist about psychiatric medications, and did not participate in dialectical behavioral therapy.  Further, to the extent that respondent-mother was dissatisfied with her services, she never asked her caseworker for help.  Given the number of services petitioner offered respondent-mother, which included accommodations for her disability, it made reasonable efforts toward respondent-mother's reunification with the children.  Additionally, respondent-mother failed in her duty to participate in, and benefit from, reunification services.  *In re Atchley*, 341 Mich App at 339.  Therefore, the trial court did not err when it found that petitioner had made reasonable efforts toward reunification.

### B.  BEST INTERESTS OF THE CHILDREN

Respondent-mother also argues that terminating her parental rights was not in the children's best interests because she had shown significant progress toward reunification in other child-protective proceedings against her.  We disagree.

When determining whether termination of a respondent-parent's parental rights is in the child's best interests, the trial court should weigh all evidence available to it and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App at 346-347 (quotation marks and citation omitted).]

"We review for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests." *In re Atchley*, 341 Mich App at 346.

In this case, the record showed that the children were in foster care for over 18 months. The children had a strong bond with their foster caregiver, who had a suitable home and wanted to adopt them. Further, the record shows that respondent-mother was noncompliant with her case service plan. The fact that another child had been removed from respondent-mother's care during the pendency of this case was further evidence that respondent-mother was not making any progress and that the children could not be returned to her in the reasonable future. Nor was there any evidence that respondent-mother's housing issues would be resolved in a reasonable time. Thus, the trial court did not clearly err when it found that terminating respondent-mother's parental rights was in the children's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel