*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SAUCIER, Minors.

UNPUBLISHED
June 18, 2026
8:43 AM

No. 374517
Ingham Circuit Court
Family Division
LC No. 24-000054-NA

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights, challenging its finding that petitioner made reasonable efforts to reunify her and her three minor children. We affirm.

## I. BACKGROUND

In early 2024, petitioner Department of Health and Human Services (DHHS) successfully petitioned the trial court to take jurisdiction over respondent's three minor children, primarily citing concerns regarding the impact of respondent's persistent mental-health struggles on her ability to safely care for them. From the outset of the proceedings, respondent's mental-health struggles—which included reports of auditory and visual hallucinations, several hospitalizations, and various psychological diagnoses—were well known to DHHS. So too were concerns regarding respondent's potential cognitive impairments and difficulty comprehending the court proceedings.

DHHS (together with respondent's counsel) thus secured for respondent the appointment of a lawyer-guardian ad litem before adjudication. And as part of the case service plan the court adopted soon after, DHHS referred respondent for a psychological evaluation and IQ testing. A clinical psychologist then confirmed respondent's existing diagnosis of schizoaffective disorder (bipolar type), and further diagnosed her with panic disorder and posttraumatic stress disorder. The same psychologist also concluded respondent fell within the average IQ range. But because she nonetheless exhibited "evidence of cognitive impairment" (likely attributable to her medication or auditory hallucinations), the psychologist believed "[e]xtra time and care should be

provided to explain things to [respondent]" and that respondent would benefit from receiving written copies of oral explanations to review later. Ultimately, the psychologist opined that respondent's children would face a significant risk of harm if returned to her care, such that the psychologist did not recommend she be their custodial parent.

Respondent faced numerous barriers to reunification throughout the proceedings, including her emotional stability, parenting skills, housing, domestic relations, and finances. DHHS provided respondent with a plethora of services aimed at addressing these barriers, and to her credit, she participated in a majority of them. Though respondent's love for her children and desire to regain custody were never in doubt, she ultimately failed to demonstrate progress toward alleviating the barriers to reunification. DHHS thus filed a supplemental petition in late 2024, seeking termination of respondent's parental rights.

The trial court held a two-day termination hearing, at which it heard testimony from various witnesses. After finding that DHHS made reasonable reunification efforts, statutory grounds for termination existed, and termination was in the children's best interests, the trial court terminated respondent's parental rights to all three children. Respondent now appeals as of right.

## II. ANALYSIS

In her sole issue on appeal, respondent claims the trial court erred by finding that DHHS made reasonable reunification efforts. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Initially, we briefly address preservation and the applicable standard of review. We generally review challenges to a trial court's reasonable-efforts findings for clear error, reversing only if "left with a definite and firm conviction that a mistake has been made." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022) (quotation marks and citation omitted). When such challenges are unpreserved, however, we review for plain error affecting substantial rights. *In re MJC*, 349 Mich App 42, 47; 27 NW3d 122 (2023). Under that standard, the appellant must demonstrate that error occurred, the error was plain (i.e., clear or obvious), and the error affected the appellant's substantial rights (i.e., caused prejudice). *Id*. at 48.

Preservation of the issue in this matter required that respondent timely challenge below DHHS's reunification efforts, including the adequacy of its accommodations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. See *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000) ("[I]f a parent believes that [a public agency] is unreasonably refusing to accommodate a disability, the parent should claim a violation of her rights under the ADA, either when a service plan is adopted or soon afterward."); *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (framing the failure to timely object to the adequacy of services below as a preservation issue). But see *In re Hicks/Brown*, 500 Mich 79, 87-89, 89 n 9; 893 NW2d 637 (2017) (expressing skepticism regarding what constitutes a timely objection to DHHS's reasonable reunification efforts, particularly when the challenge involves the adequacy of DHHS's

accommodations under the ADA). DHHS contends in its untimely brief on appeal[1] that respondent failed to do so, rendering this issue unpreserved. But we need not decide this issue in light of our ultimate determination, for the reasons outlined in this opinion, that respondent has failed to demonstrate any error, plain or otherwise.

## B. DISCUSSION

DHHS must make reasonable reunification efforts before seeking termination of a respondent's parental rights (absent aggravated circumstances not present in this case). See *Hicks/Brown*, 500 Mich at 85 (affirmative duty); MCL 712A.19a(2) (aggravated circumstances). When DHHS knows the respondent has a disability, its mandate overlaps with concurrent obligations under the ADA. *Hicks/Brown*, 500 Mich at 86, 88. That is, DHHS must reasonably modify its policies, practices, and procedures as "necessary to avoid discrimination on the basis of disability," provided such modifications would not "fundamentally alter" the provided service. *Id*. at 86 (quotation marks and citation omitted). Failure to appropriately accommodate a respondent's disability under the ADA renders DHHS's reunification efforts unreasonable. *Id*.

Respondents, for their part, have "a commensurate responsibility" to participate in the services offered and demonstrate a sufficient benefit from those services. *Frey*, 297 Mich App at 248. Before terminating a respondent's parental rights, the trial court must find that DHHS made reasonable reunification efforts. *Hicks/Brown*, 500 Mich at 83. Importantly, a respondent challenging the adequacy of DHHS's provided services "must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

---

[1] While recognizing that DHHS is not obligated to file an appellee brief, cf. *People v Smith*, 439 Mich 954, 954 (1992), we note our disappointment with the tardy nature of its brief in this case. MCR 7.212(A)(2)(a)(*i*) allows an appellee to file a brief in this Court within 21 days after service of the appellant's brief, or such other extended time as this Court allows *on motion* from the appellee. Here, DHHS did not file its brief until little more than two weeks before oral argument, approximately 166 days after service of respondent's brief. Yet it did not move for an extension of the filing deadline. Instead, it merely acknowledged the tardiness of its brief in a footnote, claiming—without explanation or support—that it "knew nothing about" this appeal until receiving notice of oral argument. The belatedness of DHHS's brief here is not as egregious as in other cases recently before this Court. See, e.g., *In re Grace*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2026 (Docket No. 369630), p 1-2 (documenting DHHS filing a brief at 4:34 p.m. the day before argument, and 308 days after the respondent filed her appellate brief). But it nonetheless implicates the same negative impact on oral argument preparation and the ability to file a reply brief before oral argument. Accordingly, we again emphasize our expectation that the State will timely devote resources to defending lower court judgments it desires us to enforce, particularly in matters so serious as permanently terminating parents' rights to their children. Because the Clerk's Office accepted DHHS's late brief for filing, however, we will consider it as appropriately filed in this case.

Here, respondent does not identify her particular disability (or disabilities) implicating the ADA; she instead refers broadly to "cognitive impairments." DHHS, however, does not dispute that respondent had—and DHHS knew about—one or more disabilities requiring accommodation under the ADA. DHHS's affirmative duty to make reasonable reunification efforts thus included an obligation to modify the services provided as reasonably necessary to accommodate respondent's disability-related needs. *Hicks/Brown*, 500 Mich at 86, 88.

Respondent insists DHHS failed to reasonably accommodate her disabilities. The record, she claims, contains no discussion of specific accommodations; demonstrates that DHHS prematurely sought termination; and reflects that DHHS acted on its belief (adopted without question from the psychological evaluation) that respondent would never be capable of regaining custody. We do not agree.

*Accommodations*. Contrary to respondent's claims on appeal, the record contains ample evidence that DHHS provided her with numerous services and modified its usual procedures to accommodate her needs. As one example, the foster-care supervisor assigned to respondent's case testified at the termination hearing that she modified its typical and routine practices and procedures across various services. This included providing transportation, regular appointment reminders, and other hands-on assistance; asking the court to appoint respondent a lawyer-guardian ad litem; coordinating with service providers to a greater extent than usual and attending appointments with respondent; recommending respondent for psychological and IQ testing (and spending hours helping her fill out the psychological-evaluation questionnaire); and providing material support in the form of pill containers, calendars, planners, bags, and glasses. She further recounted efforts she or respondent's service providers made to accommodate respondent's specific needs, such as finding a payee to help with her finances (and a replacement when respondent discharged the first one), looking into the appointment of a guardian for respondent, and helping respondent find a placement in an adult foster-care program.

Respondent does not substantively challenge the adequacy of DHHS's accommodations on appeal. Nor does she specify any deficiencies in the services provided or identify alternative services that would have better accommodated her needs. Considering the record evidence of DHHS's provision of services and accommodations, together with respondent's failure to establish that she would have "fared better" had DHHS offered her other services or accommodations, *Sanborn*, 337 Mich App at 264, respondent has not demonstrated that DHHS's accommodations were inadequate so as to render its reunification efforts unreasonable.

*Psychological Evaluation and Termination Timing*. There is no indication in the record that DHHS immediately or unquestioningly interpreted the psychological-evaluation report as indicating that respondent could never develop the ability to safely care for her children, nor that DHHS accelerated the proceedings accordingly. The psychological-evaluation report was completed in April 2024. The court received it at a dispositional review hearing two months later and thereafter ordered reasonable efforts to continue. DHHS did not file a supplemental (and amended supplemental) petition until late 2024. All the while, DHHS continued providing respondent services, with appropriate accommodations based on respondent's "cognitive impairments."

By the time DHHS filed the supplemental petition seeking termination, it had already provided respondent many services and accommodations. Some of those services were extensive, and respondent participated in most of them. As reflected in the termination-hearing testimony from respondent's foster-care supervisor and several service providers, however, respondent failed to demonstrate any benefit from the services or improvement sufficient to alleviate the barriers to reunification. Various witnesses expressed disbelief regarding respondent's ability (then or in the near future) to adequately care for her children. Such conclusions were not based solely on the psychological evaluation, but rather respondent's continued difficulty meeting her own day-to-day needs without intervention. Indeed, two mental-health service providers separately testified that respondent would benefit from residential care, and respondent in fact resided in an adult foster-care facility by the end of the termination proceedings. Under these circumstances, we cannot agree with respondent that the speed at which DHHS sought termination rendered its reunification efforts unreasonable or reflected a determination that "nothing [respondent] did could allow her to show progress because the psychological evaluation said that she could never be a parent."

*Summary*. Considering all of this, the trial court did not err by finding that DHHS made reasonable reunification efforts, including reasonable accommodations for respondent as required under the ADA.

## III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock