# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. R. BELL-SMITH, Minor.

UNPUBLISHED
December 14, 2017

No. 338019
Wayne Circuit Court
Family Division
LC No. 15-520184-NA

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Respondent father appeals as of right the order of the trial court terminating his parental rights to his minor child under MCL 712A.19b(3)(b)(*i*) (sexual abuse of the child by the parent), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of future harm to the child). We affirm.

In June 2015, when the child in this case was five years old, she lived with her mother and grandmother and visited often with respondent, who is the child's biological and legal father. After visiting with respondent for approximately three to five days in June 2015, the child was dropped off at the mother's home as her grandmother was arriving home from the grocery store. According to the grandmother, the child approached her and told her that she wanted to tell her something. The grandmother suggested that they go into the house, but the child instead pulled her to the side of the house and told her that respondent had sexually assaulted her. The grandmother and the child went immediately into the house and told the information to the child's mother. The mother later testified that when the grandmother and the child approached her, she took the child aside and the child told her the information. The mother thereafter contacted the police who alerted Child Protective Services. During a video-recorded forensic interview, the child told the same information to the forensic interviewer. Petitioner consequently filed a petition to terminate respondent's parental rights to the child.

The trial court thereafter held what is commonly referred to as a "tender years hearing" pursuant to MCR 3.972(C) to determine the admissibility of the child's statements regarding the alleged abuse. At the tender years hearing, the forensic interviewer explained the protocol used to avoid bias and to encourage a child to talk, and testified that the protocol had been followed during her interview with the child. The forensic interviewer further testified that during the interview she asked the protocol questions to ascertain whether the child understood right versus wrong and truth versus lies, and that the child understood those concepts.

-1-

At the conclusion of the tender years hearing, the trial court watched the DVD recording of the forensic interview and thereafter summarized on the record what the child had stated during the forensic interview. The trial court determined that the DVD recording of the child's statements had adequate indicia of trustworthiness and therefore were admissible. The trial court then held a combined adjudicative and dispositional hearing. At the conclusion of the hearing, the trial court assumed jurisdiction of the child and terminated respondent's parental rights.

This Court reversed the trial court's order and remanded to the trial court,[1] determining that the trial court had erred by (1) admitting the child's own statements contained on the DVD during the adjudicative portion of the hearing instead of the testimony of those witnesses who heard the child make the statements, and by (2) combining the adjudicative and dispositional proceedings into one hearing. This Court remanded for further proceedings before the trial court "not inconsistent" with this Court's opinion.

On remand, with a different trial judge presiding, the trial court again held a tender years hearing during which the trial court and the attorneys viewed the DVD of the forensic interview of the child. After viewing the DVD, the trial court determined that certain statements made by the child during the forensic interview, though hearsay, were admissible through the testimony of the forensic interviewer. The trial court thereafter held the adjudicative portion of the proceedings, during which the forensic interviewer testified.

The child, at that time seven years old, also testified during the adjudication hearing. She was permitted to sit behind a screen while testifying so that she could not see respondent, but the trial court noted that nonetheless the child was clearly frightened while she testified. The child testified that she remembered telling her grandmother that respondent had touched her in a way that was not right, and that her grandmother went upstairs and told her mother. She further testified that she remembered that when she told her grandmother it was daytime and they were outdoors in their front yard and that somebody was helping her grandmother get groceries out of the car. She testified that she remembered what she told her grandmother and that what she told her grandmother was true. She further testified that she also remembered telling the same things to another lady, but that she did not want to say those things in court because she was scared. She agreed that she would like to forget about the bad things that had happened. When pressed to tell the things she had said about respondent, she said "I can't remember." When asked "Do you remember what it is about that you told your grandma or you just don't want to tell?" the child replied "I don't want to tell." She did testify, however, that respondent had touched her and that it was a "bad touch" not a good touch, and that he had touched her in a "bad place" with a "bad thing." The child further testified that no one had told her to say something about respondent. She testified that when she is with respondent he is "nice" to her, but also testified that she was afraid of respondent. She testified:

> Q:     Are you scared of your dad?

---

[1] *In re J.R. Bell-Smith, Minor*, unpublished opinion per curiam of the Court of Appeals, issued August 2, 2016 (Docket No. 331586).

Q:      A: Yes.

Q:      You are? Why? You had said, he had been nice to you before, right?

A:      Yes. After that happened, he has been being good.

Q:      Was he good before this supposedly happened?

A:      Yes.

Q:      So, but you are saying, you are scared of him?

A:      Yes.

The child's mother testified at the adjudication hearing and confirmed that in June 2015 the child came home after visiting with respondent and told the child's grandmother that respondent had sexually assaulted her, and that the grandmother and the child immediately told her. The mother later called the police and reported the assault, then took the child to the hospital for an examination. The mother testified that the doctors told her that the examination revealed no conclusive evidence. She further testified that she did not instruct the child regarding what to say about the incident, and had not discussed the incident with the child since it happened. The mother testified that she had only heard the child tell the story of the incident twice, and that both times the child was consistent in her report of what had happened. The mother testified that she had later discussed the allegations with the grandmother, and that the child had told both women the same information, being that "her dad put his private part on her butt."

Respondent testified and denied all allegations of sexual abuse, and testified that he had a very positive relationship with the child. He testified that the allegations had been instigated by the child's mother and grandmother, and that at the time of the allegations the child's mother had been jealous of his relationship with his new girlfriend, and also that the child's grandmother disliked him. He also testified that the child had lied during her testimony.

At the conclusion of the adjudicative portion of the proceedings, the trial court found that it had jurisdiction of the child pursuant to MCL 712A.2(b)(2). The trial court conducted the dispositional portion of the proceedings immediately thereafter, and at the conclusion the trial court determined that termination of respondent's parental rights was warranted pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j). The trial court further found that termination was in the child's best interests. The trial court once again terminated respondent's parental rights. Respondent thereafter filed this appeal.

Respondent argues that the trial court clearly erred when it found that termination was warranted pursuant to MCL 712A.19b(3)(b)(*i*) (sexual abuse of the child by the parent), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of future harm to the child). Respondent further argues that the trial court clearly erred in finding that termination of his parental rights is in the best interests of the child. Respondent's arguments are without merit.

This Court reviews for clear error a trial court's decision that a statutory basis for termination of parental rights has been established by clear and convincing evidence. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). This Court also reviews for clear error the trial court's determination that termination is in the best interests of the child. *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). A decision is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

To terminate parental rights, a trial court is required to find that at least one of the statutory grounds for termination set forth in MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Only one statutory ground need be established by clear and convincing evidence to warrant termination of a parent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

In this case, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j), which provide as follows:

(3) The court may terminate the parental rights of a parent to a child if the court finds, by clear and convincing evidence, one or more of the following:

* * *

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In determining that termination was warranted under these subsections, the trial court stated that it was considering the video interview in which the child told the forensic interviewer that the abuse had occurred. The trial court summarized the statements made by the child during

the recorded interview as "my daddy put his private part on me," "he uses it for the bathroom," and also, as summarized by the trial court "[h]e took her pants off. And, then, in another instance he laid down in back of her. He was rubbing his private part over her back and front, and that she then pointed to her butt and her front area and said that his private part was wet."

The trial court noted that when the child testified she did not repeat the statements that she had made in the forensic interview, but was very frightened, was crying, was obviously afraid of respondent, and it had been necessary to put up a screen so that she could not see respondent. The trial court determined that based upon the child's statements during the forensic interview, the corroborating testimony of the child's mother, and the child's extreme fear of respondent during the hearing, the evidence supported a finding that termination was warranted pursuant to subsection (3)(b)(*i*), that the child had suffered sexual abuse by respondent and it was reasonably likely that she would suffer injury or abuse in the foreseeable future if placed with respondent.

The trial court further found that because the sexual abuse had occurred, termination was also warranted under subsection (3)(g) because there was no reasonable expectation that respondent could provide proper care and custody, and that termination was also warranted pursuant to subsection (3)(j) because, in light of the sexual abuse, there was a reasonable likelihood based on the conduct or capacity of respondent that the child would be harmed in the future if returned to respondent's care.

The trial court correctly determined that the record in this case supports termination pursuant to these statutory subsections. A trial court may terminate parental rights under subsection (3)(b)(*i*) if there is clear and convincing evidence that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" and "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." In this case, the record establishes that respondent sexually assaulted the then five-year-old child. During the forensic interview, the child described the abuse that had occurred, which was later recounted by the forensic interviewer. The testimony of the child's mother corroborated that the child made the same statements to her upon returning home from the visit to respondent's home. And although she did not repeat the allegations in their entirety during her testimony at the hearing, the child testified that she told the truth to her grandmother, and that respondent had touched her in a bad place with a bad thing. Considering this evidence, the trial court did not clearly err in concluding that clear and convincing evidence supported terminating respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*).

A trial court may terminate parental rights under subsection (3)(g) if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." In this case, the evidence established that respondent sexually assaulted the child when she was five years old. The trial court therefore did not clearly err in determining that respondent had failed to provide proper care and custody of the child and that there was no reasonable expectation that he would be able to do so in the future.

A trial court may terminate parental rights pursuant to subsection (3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Here, the record indicates that the child, at age five, upon returning home from respondent's home, immediately reported to her grandmother and mother that respondent had sexually assaulted her. The child reported the same information during the forensic interview. At the termination hearing held after remand by this Court, the child testified that respondent had touched her in a bad place with a bad thing. She further testified that she did not lie when she told her grandmother about the incident, but that she did not want to repeat what she had told her grandmother. In light of the evidence that respondent sexually abused the child, and given the child's extreme fear of respondent, the trial court did not clearly err in finding that there was a reasonable likelihood that the child would be harmed if placed in respondent's care.

Respondent also argues briefly that termination was improper because he was not given an opportunity to participate in reunification services. This argument is also without merit. Reunification services are not required in every situation. *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000). Where, as in this case, DHHS seeks to terminate parental rights as part of the initial petition, it is unnecessary to develop a case service plan or to provide services because the agency's goal is termination, not reunification. See *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009).

Respondent also contends that the trial court erred by determining that termination of respondent's parental rights was in the child's best interests. We disagree. Once a statutory ground for termination has been proven, the trial court must also find that termination is in the best interests of the child before it can terminate parental rights. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). If the trial court finds, by a preponderance of the evidence, that termination is in the child's best interests, the trial court is required to terminate the parent's parental rights. MCL 712A.19b(5).

In considering whether termination of parental rights is in the best interests of the child, a wide variety of factors should be considered including, potentially, the existence of a bond between the child and the parent, the parent's ability to parent, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with his or her service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews a trial court's decision that termination is in the child's best interests for clear error. *In re Johnson*, 305 Mich App 328, 335; 852 NW2d 224 (2014). For a decision to be clearly erroneous, it must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

Here, in determining that termination was in the child's best interests, the trial court considered that the child was very fearful of respondent; the trial court noted that although it had been nearly two years since the abuse occurred, the child nonetheless cried throughout her testimony. The trial court determined that in light of the risk of harm to the child and the child's fear of respondent, termination was in the child's best interests. The record supports this determination. The child consistently reported the facts that established that respondent had sexually assaulted her. Her reports were corroborated by the testimony of her mother and the

forensic interviewer. Though apparently too afraid of respondent to repeat the allegations in their entirety, she testified that she did not lie when she reported the incident. She further testified that respondent had touched her in a bad place with a bad thing, but that respondent had been "being good" since that incident. She testified that she nonetheless was afraid of him. In light of the sexual assault and the child's fear of respondent, the trial court did not clearly err in determining that termination was in the child's best interests.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien