*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re REDMOND, Minor.

UNPUBLISHED
October 8, 2019

No. 348560
Oakland Circuit Court
Family Division
LC No. 2018-860243-NA

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals the order terminating her parental rights to her minor child under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), and (j) (reasonable likelihood that the child will be harmed if returned to the parent). We affirm.

## I. FACTS

This case arises out of the termination of respondent's parental rights to her minor child as a result of her alcohol abuse. In January 2018, a petition was filed, alleging that the minor child came within the trial court's jurisdiction pursuant to MCL 712A.2(b)[1] because respondent had been hospitalized twice for "alcohol dependence" and "delirium" since October 2017 and that respondent had left her son, who was two years old at the time, unattended outside while she attempted to walk to a store in an intoxicated state. According to the petition, respondent had failed to follow through with treatment for her alcohol use despite being offered services. After a hearing was held on January 29, 2018, the trial court authorized the petition and the minor child was placed in the care of respondent's cousin.

On March 29, 2018, respondent pleaded to the allegations in the petition—namely, that she "was abusing alcohol in October 2017 while [the minor child] was in her care." The trial

---

[1] The minor child's father was also named in the petition, and the father's parental rights to the minor child were terminated at the same time as respondent's parental rights. This appeal deals exclusively with the termination of respondent's parental rights.

court assumed jurisdiction, and the parties agreed to proceed with an immediate disposition. The Department of Health and Human Services (DHHS) foster care worker assigned to the case provided a parent-agency agreement (PAA) for respondent, which required respondent to (1) complete a substance abuse assessment and a psychological evaluation; (2) participate in substance abuse treatment; (3) attend parenting classes; (4) submit to random alcohol screenings three times per week; (5) undergo "a comprehensive medical evaluation," including a screening for Huntington's disease; (6) maintain suitable housing; (7) obtain a legal source of income; and (8) contact the DHHS worker at least two times each month. Respondent was ordered to stop consuming alcohol. With respect to the testing for Huntington's disease, the DHHS worker indicated that the disease is hereditary, that the paternal side of respondent's family has a history of suffering from the disease, and that a genetic test was appropriate because respondent might be exhibiting some of the early symptoms of the disease.

Respondent's progress with maintaining sobriety and completing the PAA was poor. Although respondent was allowed supervised visits with the minor child, her parenting time was suspended early in the proceedings because respondent was intoxicated during parenting time on two occasions. Parenting time was never reinstated because respondent failed to complete three consecutive negative alcohol screenings. In November 2018, petitioner filed a supplemental petition seeking termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g) (failure to provide proper care and custody), and (j). The supplemental petition alleged that, during the proceedings, respondent failed to appear for a majority of her random alcohol screenings and failed to complete other aspects of the PAA, such as submitting to a screening for Huntington's disease. The supplemental petition further alleged that respondent continued to abuse alcohol, had several police contacts while "highly intoxicated," and was hospitalized numerous times for excessive intoxication throughout the course of the proceeding. The supplemental petition was authorized by the trial court and termination proceedings commenced.

After the termination hearing was held, the trial court referee concluded that there was no evidence that respondent suffered from Huntington's disease. The referee found that reasonable reunification services were provided to respondent but that respondent failed to take advantage of most of the services. The referee also concluded that statutory grounds existed to support the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j) and that termination of respondent's parental rights was in the minor child's best interests. The trial court adopted the referee's findings and terminated respondent's parental rights on March 28, 2019. This appeal followed, and respondent's sole argument on appeal is that petitioner failed to offer reasonable accommodations and services to aid in reunification.[2]

---

[2] On appeal, respondent does not argue that the trial court clearly erred by determining that petitioner established statutory grounds for termination or by determining that termination was in the minor child's best interests. Nonetheless, upon review of the record, we conclude that the trial court did not clearly err when it determined that statutory grounds existed to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (j), *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), and that termination of respondent's parental rights was in the

## II. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

"The time for asserting the need for accommodation in services is when the [trial] court adopts a service plan," at which time a respondent must "object or indicate that the services provided to [her are] somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (quotation marks and citation omitted). Here, respondent's counsel first objected to the services petitioner offered to respondent at the termination hearing on January 9, 2019, arguing that the PAA should have been modified to accommodate respondent's mental "deficiencies" and Huntington's disease. Because respondent did not argue that the services offered to her were inadequate until more than nine months after the PAA was adopted, this issue is unpreserved. See *id*.

Unpreserved claims of error are reviewed for plain error affecting a party's substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "An error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Beers*, 325 Mich App at 677 (quotation marks, citation, and brackets omitted).

## III. DISCUSSION

Respondent argues that petitioner failed to offer reasonable services and accommodations for her disabilities and, thus, failed to make reasonable efforts to reunify her with the minor child. We disagree.

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown Minors*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown Minors*, 500 Mich at 85, citing MCL 712A.18f(3)(d). This includes updating the parent's treatment plan throughout the case, and giving the parent reasonable time to make changes and benefit from the services before the termination of parental rights. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000) (quotation marks and citation omitted).

---

minor child's best interests, *In re JK*, 468 Mich 202, 209; 661 NW2d 216, reh den 468 Mich 1239 (2003).

However, if a parent suffers from an Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, disability, or "a known or suspected intellectual, cognitive, or developmental impairment," the DHHS has a duty to reasonably accommodate the parent's disability by offering services designed to facilitate the child's return to his or her home. *In re Hicks/Brown*, 315 Mich App 251, 282; 890 NW2d 696 (2016), aff'd in part and vacated in part, 500 Mich 79 (2017); *In re Terry*, 240 Mich App at 25-26. In *In re Hicks/Brown*, this Court explained that DHHS must

> offer evaluations to determine the nature and extent of the parent's disability and to secure recommendations for tailoring necessary reunification services to the individual. The DHHS must then endeavor to locate agencies that can provide services geared toward assisting the parent to overcome obstacles to reunification. If no local agency catering to the needs of such individuals exists, the DHHS must ensure that the available service providers modify or adjust their programs to allow the parent an opportunity to benefit equally to a nondisabled parent . . . . [*In re Hicks/Brown*, 315 Mich App at 282.]

"[E]fforts at reunification cannot be reasonable . . . if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Hicks/Brown*, 500 Mich at 86. However, "[w]hile the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of [the] respondent[] to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

## A. "DISABILITY" UNDER THE ADA

Respondent argues that petitioner failed to modify the service plan to accommodate her Huntington's disease. However, there is no evidence in the lower court record that establishes that respondent actually had Huntington's disease. Based on suspicion that respondent may have Huntington's disease, her PAA required respondent to complete genetic testing to determine whether she suffered from the disease. Respondent failed to submit to the evaluations offered by petitioner during the 13-month-long proceedings, and the only evidence that respondent suffered from Huntington's disease is her display of some of the symptoms consistent with the disease and the fact that the disease is genetic and runs in respondent's family. Thus, the record evidence is insufficient to establish that respondent suffered from Huntington's disease so as to require petitioner to accommodate respondent or to change the PAA. See *In re Hicks/Brown*, 500 Mich at 86 (holding that the DHHS fails its duty to provide reasonable reunification services when it does not provide reasonable accommodations or modifications "to the services or programs offered to a *disabled* parent") (emphasis added).

Further, separate from respondent's alleged Huntington's disease, respondent's counsel argued below that respondent's psychological evaluation "alluded to some ill [sic] deficiencies." Also, on appeal, respondent argues that her low IQ score on certain tests raised a "red flag" that required petitioner to investigate and "implement meaningful . . . services" aimed at

reunification. However, respondent never explains or rationalizes what those "ill deficiencies" were,[3] nor does respondent explain how her low IQ constitutes a disability requiring accommodation. It is not the duty of this Court to search for authority to sustain or reject respondent's position. See *In re Smith*, 324 Mich App 28, 45; 919 NW2d 427 (2018) ("Respondent does not identify a disability of her own that required accommodation and a party may not leave it to this Court to search for authority to sustain or reject its position.") (quotation marks and citation omitted). Thus, respondent has abandoned any argument that her low IQ and "ill deficiencies" amounted to disabilities under the ADA. See *id.*

Although not argued by respondent as a basis for petitioner's duty to accommodate respondent, there is substantial evidence that respondent suffered from alcoholism, which is a "disability" recognized under the ADA. The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 USC 12102(1). "Mental impairment" includes "any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 28 CFR 35.108(b)(1). The definition of a physical or mental impairment specifically includes alcoholism. 28 CFR 35.108(b)(2). Accordingly, respondent suffered from a cognizable disability under the ADA requiring accommodation and "services designed to facilitate the child's return to [respondent's] home." See *In re Hicks/Brown*, 500 Mich at 86.

## B. REASONABLE EFFORTS TOWARDS REUNIFICATION

Even if respondent was diagnosed with Huntington's disease, and considering respondent's alcoholism constituted a "disability" under the ADA, see 42 USC 12102(1); 28 CFR 35.108(b)(2), the record demonstrates that petitioner provided reasonable accommodation services to respondent and made reasonable efforts toward reunification. The PAA required respondent to, among other things, (1) participate in alcohol screens three times per week; (2) complete a substance abuse evaluation, psychological testing, and a medical evaluation for Huntington's disease; (3) undergo inpatient and outpatient treatment for her alcoholism; (4) and refrain from alcohol use. Respondent made some progress toward the completion of her PAA, including her successful completion of inpatient treatment and her completion of a substance abuse and psychological evaluation. For the most part, however, respondent failed to meaningfully participate in the services offered by petitioner. Respondent failed to appear for 120 out of 126 alcohol screenings, missed her scheduled appointments (including her testing for Huntington's disease), and continued to abuse alcohol in the time leading up to termination. In fact, the DHHS worker observed respondent intoxicated on numerous occasions, including at least two times during scheduled visitations with the minor child. Respondent was also hospitalized for excessive intoxication on several occasions after implementation of her PAA and had numerous police contacts in which she was reported as being "highly intoxicated."

---

[3] Respondent's hospital records indicate that she suffered from depression and anxiety, but respondent has not argued on appeal that those diagnoses require accommodation under the ADA.

Respondent never stated that she did not understand the terms of the PAA or that she could not comprehend the importance of maintaining her sobriety so that she could be reunited with her minor child.  Rather, respondent only questioned the frequency with which she was required to complete alcohol screenings, arguing that she did not have transportation to attend the alcohol screenings three times per week.  The record reflects that respondent was given bus passes to attend the screenings, but she used the bus passes for shopping and purposes unrelated to the alcohol screenings.  Respondent refused rides from the DHHS worker to attend her alcohol screenings.  Further, the record establishes that respondent failed to participate in outpatient substance abuse treatment and that respondent's continued alcohol abuse escalated throughout the course of the proceedings.  Thus, the trial court did not commit plain error when it determined that petitioner made reasonable efforts to promote reunification and that respondent failed to "uphold her commensurate responsibility to engage in and benefit from th[e] services" offered by petitioner.  See *In re Smith*, 324 Mich App at 45.

Affirmed.


/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron