*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. A. DOERING, Minor.

UNPUBLISHED
July 16, 2020

No. 351631
Monroe Circuit Court
Family Division
LC No. 19-024719-NA

Before: TUKEL, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to his minor child, BD, under MCL 712A.19b(3)(g) (failure to provide proper care or custody), and (j) (reasonable likelihood child would be harmed if returned to parent). We reverse and remand.

## I. BACKGROUND

In December 2018, petitioner, the Department of Health and Human Services, filed a petition stating that BD's mother had died and neither respondent nor another putative father had established paternity. Respondent, who had been incarcerated since February 2018, testified that he believed BD was his child and that he wished to establish paternity.

In June 2019, DNA analysis revealed that respondent was BD's biological father, and the trial court thereafter entered an order declaring him BD's legal father. Petitioner immediately filed a petition seeking termination of respondent's parental rights at the initial dispositional hearing. Petitioner alleged that respondent could not provide proper care and custody to BD because he was incarcerated and that BD was reasonably likely to be harmed if returned to his care due to respondent's domestic violence history. In addition, petitioner alleged that respondent had been involved with Child Protective Services (CPS) in the past. Specifically, in December 2010, nine-month-old CG died due to sepsis, failure to thrive, and co-sleeping. During a CPS investigation into the matter, respondent reported that he was CG's biological father. In March 2012, CPS investigated neglect of respondent's daughter, BM, by respondent and BM's mother. Respondent voluntarily released his parental rights to BM. At the time of BD's birth, respondent was incarcerated for, among other offenses, domestic violence against another one of his children's mother while she was pregnant.

-1-

At the preliminary hearing on the termination petition in the instant matter, CPS specialist Eva Kopas testified that "there's not many services [petitioner] can provide to [respondent]" and that, given his earliest release date of December 2021 and his latest release date of February 2038, it was unlikely respondent would complete services in a reasonable time. The trial court authorized the petition without making a finding that reasonable efforts at reunification were unnecessary.

In a November 2019 combined adjudication and termination hearing, respondent's counsel requested that respondent be provided with a service plan. Respondent emphasized that he was never determined to be CG's legal father, but largely admitted that the other allegations regarding his criminal and CPS history were true. The trial court ultimately terminated respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

Respondent does not challenge the trial court's findings that statutory grounds to terminate his parental rights existed or that termination was in BD's best interests. Respondent argues only that the trial court prematurely terminated his parental rights because petitioner did not provide him with a service plan, and therefore, did not make reasonable efforts at reunification.

To preserve the issue of whether petitioner made reasonable efforts at reunification, a respondent must object at the time the court adopts a service plan. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012); *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). Respondent did not assert that he wanted a service plan until the combined adjudication and termination hearing, nearly four months after the petition to terminate his parental rights was filed. Therefore, the issue is not preserved for review.

This court reviews unpreserved issues for plain error affecting substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009), citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 347809); slip op at 2, citing *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Specifically, no efforts at reunification must be made if there "is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of . . . MCL 722.638." MCL 722.638, in turn, provides in relevant part:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's

home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(i) Abandonment of a young child.

\* \* \*

(b) The department determines that there is risk of harm, child abuse, or child neglect to the child and either of the following is true:

\* \* \*

(ii) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state, the parent has failed to rectify the conditions that led to the prior termination of parental rights, and the proceeding involved abuse that included 1 or more of the following:

(A) Abandonment of a young child.

Respondent argues that petitioner did not allege, and the trial court did not find, that aggravated circumstances relieved petitioner of its statutory duty to make reasonable efforts at reunification. Respondent is correct. The petition alleged that services offered to respondent in the 2012 case regarding BM constituted reasonable efforts to prevent removal of BD under MCR 3.965(C)(4), but the petition did not allege, and the court did not find, that the services offered in 2012 constituted reasonable efforts at reunification under MCL 712A.19a(2), and it is difficult to see how they could. Respondent is also correct that the trial court did not expressly make a finding that reasonable efforts at reunification were not required due to aggravated circumstances.

At the preliminary hearing at which the petition was authorized, Kopas testified:

There's not many services we can provide to [respondent], given that his incarceration happened prior to our abuse and neglect [investigation], . . . [W]e have made contact with the prison to see what services are available, and what he can do from there[.] [H]owever, due to his earliest release date, it's not likely that he'll be able to do services in a reasonable time frame.[1]

Kopas's testimony at the preliminary hearing was the last testimony the trial court heard on a potential service plan before the hearing at which respondent's parental rights were terminated.

Our Supreme Court has stated that merely inquiring with a prison regarding available services does not discharge petitioner's duty to make reasonable efforts at reunification with an incarcerated respondent. *Mason*, 486 Mich at 152. In *Mason*, the petitioner created a service plan

---

[1]Nonetheless, the box indicating that reasonable efforts at reunification shall be made was checked in the trial court's order authorizing the petition.

for the incarcerated respondent. *Id*. Despite a social worker's testimony that it was the petitioner's policy to contact the prison to see what services were available, our Supreme Court held that the petitioner had failed to make reasonable efforts at reunification because it did not actually facilitate the respondent's access to services. *Id*. at 157.

In this case, petitioner did not even adopt a service plan for respondent, and there is no evidence on the record that Kopas spoke with the prison about any particular service that might have benefitted respondent. Therefore, respondent is correct that petitioner failed to make reasonable efforts at reunification. Respondent is also correct that the trial court erred in failing to make a finding that reasonable efforts were actually made or were not required under MCL 712A.19a(2) due to aggravated circumstances. *Rippy*, __ Mich App at __; slip op at 2.

We acknowledge and find no fault with the trial court's consideration of respondent's prior actions with BM when it addressed the instant matter, or its consideration of respondent's pattern of failure to establish paternity and domestic violence. Kopas testified regarding respondent's extensive pattern of using violence to resolve intrafamily disputes and respondent's domestic violence victims included his relatives, his romantic partners, and relatives of his romantic partners. Moreover, respondent testified to a multitude of misconduct incidents while he has been incarcerated, some of which involved violence. However, the trial court did not, in engaging in such considerations, determine that clear and convincing record evidence existed to find that there was a risk of harm, child abuse, or child neglect to BD, nor did it find that respondent had abandoned BD. Contrary to petitioner's argument otherwise, that the trial court *may* have potentially been able to make such determinations does not absolve the trial court of its obligation to actually do so in order to terminate respondent's parental rights. The trial court thus erred in terminating respondent's parental rights without an explicit finding that petitioner made reasonable efforts at reunification or that such efforts were not required, and these errors affected respondent's substantial rights. We therefore reverse and remand this matter to the trial court to either order that reasonable services be provided to respondent, or articulate a factual finding by clear and convincing evidence that aggravated circumstances exist such that services are not required.

Reversed and remanded. We retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Jane M. Beckering

-4-

# Court of Appeals, State of Michigan

## ORDER

In re B A Doering, Minor

Docket No.    351631

LC No.        2019-024719-NA

Jonathan Tukel
Presiding Judge

Deborah A. Servitto

Jane M. Beckering
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall be given priority on remand until they are concluded.  As stated in the accompanying opinion, the trial court must either order that petitioner provide reasonable services to respondent, or articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required.  The proceedings on remand are limited to these issues.  The trial court shall decide the issues on remand within 112 days of the Clerk's Certification of this order.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 16, 2020
Date

_____
Chief Clerk