*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. O. BALLARD, Minor.

UNPUBLISHED
October 20, 2022

No. 360964
Wayne Circuit Court
Family Division
LC No. 2021-000195-NA

In re REEVES/REEVES-KNIGHT, Minors.

No. 360967
Wayne Circuit Court
Family Division
LC No. 2021-000196-NA

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals as of right the trial court's orders terminating his parental rights to the minor children, NOB, JJR, and DERK, pursuant to MCL 712A.19b(3)(g) and (j). We affirm.

## I. FACTUAL BACKGROUND

In February 2021, respondent was residing in Detroit with the three children and the mother of JJR and DERK, Latrice Renee Knight. The mother of NOB previously left the child with respondent and relocated to another state to escape respondent's domestic violence. Another woman, Brandy Nelson, was also living with respondent and the children.[1] In February 2021, Nelson reported to authorities that respondent assaulted her with a bottle and locked her in a closet for two days. Shortly thereafter, Nelson disappeared. Her deceased body was later discovered in

---

[1] Nelson also had a child with respondent. That child was placed in a guardianship with a relative.

a garage two houses away from respondent's home, wrapped in garbage bags and bound with electrical tape and a power cord.

After Nelson's disappearance, respondent's vehicle was stopped by the police in a traffic stop. Respondent was driving, and Knight and the three minor children were inside the car. Respondent's blood alcohol level registered over the legal limit. Officers observed that the children were not properly secured and were covered with urine and feces. The police found blood and a handprint in the trunk of the car. When the police and a Children's Protective Services (CPS) investigator visited respondent's home, they found that the water service had been shut off. The home was also illegally connected to other utilities, and had exposed wires inside and outside the house. The home was heated by a propane heater with an open flame that was accessible to the children. The investigators observed that the home was strewn with dirty diapers and feces. A dead dog was chained in the backyard. The children were removed from the home and placed in foster care.

Respondent's fingerprints were found on the garbage bags and electrical tape that were wrapped around Nelson's body, and his DNA was located on the power cord. The blood seen by the officers in respondent's car matched Nelson's blood. The bloodstain found by officers inside respondent's home was also a match to Nelson's blood. Respondent was charged with first-degree murder and tampering with evidence in relation to Nelson's death, and those charges remained pending throughout the proceedings.

Petitioner filed a petition for jurisdiction of the children and termination of respondent's parental rights at the initial dispositional hearing. Respondent entered a plea of no contest to the court establishing grounds for jurisdiction over the children and to statutory grounds for termination of his parental rights. A summary of petitioner's investigation, which was supported by nine attachments, was admitted as a single exhibit and used to establish a factual basis for respondent's no contest pleas. Petitioner's counsel read the exhibit into the record, which was an outline of the facts as listed above, including the evidence discovered surrounding Nelson's murder and respondent's suspected involvement, as well as the domestic violence and unsuitable living conditions in respondent's home. The exhibit also mentioned that Nelson allegedly burned JJR's and DERK's cheeks with a cigarette and that the children did not receive medical attention for the burns. The trial court found that respondent "exposed his children to extensive violence and deplorable living conditions." The court stated that the home had no running water, illegal electricity, diapers and feces strewn throughout the home, an open flame in a heater accessible to children, and a dog carcass in the backyard. The court further stated that respondent had a prior conviction of second-degree murder and a history of abusing women, especially the mothers of the children. The court also noted that respondent's fingerprints and DNA were found on the materials used to wrap Nelson's body. After recounting this evidence, the court found by a preponderance of the evidence that grounds for jurisdiction were established and that statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j) were established by clear and convincing evidence.

At the best-interest hearing, CPS worker Kiana Anderson testified that NOB had speech delays and that she was unable to communicate with him about respondent. She stated that when she observed respondent and Knight with NOB in February 2021 prior to being placed in foster care, NOB interacted more with Knight than with respondent. If NOB cried, respondent directed

Knight to take care of the child. Anderson testified that she recommended termination of respondent's parental rights because of the extensive domestic violence that respondent inflicted on Knight and NOB's mother over a period of years, respondent's prior conviction of murder and his pending murder trial, and respondent's inability to provide a permanent and stable home for the children. Anderson further testified that even if respondent was acquitted, reunification with respondent would not be in the children's best interests.

Jasmine Seal, the children's foster care worker, testified at the best-interest hearing that NOB and JJR were both diagnosed with autism. She stated that JJR was "pretty much nonverbal due to his developmental delays" and NOB was "a selective verbal," and, therefore, she was unable to talk with the children about respondent. Seal testified that all three children required treatment, counseling, or rehabilitative services from professionals, none of which respondent ever obtained for them. Seal stated that she was unable to observe respondent with the children due to his incarceration. Seal also testified that the children were making progress in their current placements.

Respondent testified at the best-interest hearing that he did not believe termination was in the children's best interests and that he wanted to be available to them if he was released from incarceration. He anticipated that he would be acquitted of murder. He denied neglecting the children or causing their developmental delays through his neglect.

At the conclusion of the hearing, the trial court found that the children "really lived in a house of horrors," where they were physically abused, exposed to violence against women and animals, and lived amidst feces and filth. The trial court found that the children had developmental delays because they lived in an environment where they could not thrive. The court stated that the level of depravity in the home was "so high that there's no way [respondent] could provide these children with any benefit that would outweigh the risk of him being involved in their lives." Thus, the court found that termination of respondent's parental rights was in the children's best interests.

Respondent now appeals.

## II. BEST INTERESTS

In his sole issue on appeal, respondent argues that the trial court erred by finding that termination of his parental rights was in the children's best interests. We disagree.

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). The trial court's best-interest decision is reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

"Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). "The trial court should weigh all the evidence available to determine [a child's] best

interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In *In re White*, this Court stated:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id*. at 713-714 (citation and quotation marks omitted).]

After respondent entered a plea of no contest to grounds for jurisdiction and statutory grounds for termination, the sole remaining inquiry was whether termination of his parental rights was in the children's best interests. Respondent first argues that the trial court's best-interest finding was erroneous because the court wrongly found him guilty of murder before his criminal trial. This argument, however, misreads the record. The trial court specifically stated:

> I want to preface my findings with saying that this is not a criminal case. This is a child protective proceedings [sic]. And while I believe there's overwhelming evidence that [respondent] was involved in the torture and murder of Brandy Nelson—and a lot of that I believe the children were exposed to—the outcome of this criminal case has no bearing on my findings in regarding [sic], in regards to best interest.

As described above, the trial court then went on to find that the children "really lived in a house of horrors," where they were physically abused, exposed to violence against women and animals, and lived amidst feces and filth. The trial court found that the children had developmental delays because they lived in an environment where they could not thrive. The court stated that the level of depravity in the home was "so high that there's no way [respondent] could provide these children with any benefit that would outweigh the risk of him being involved in their lives." Accordingly, contrary to respondent's argument, the trial court did not find that respondent murdered Nelson.[2]

Respondent also argues that there was no testimony regarding his ability to parent, support, and love the children. Respondent's argument is unconvincing because the evidence overwhelmingly supports the trial court's conclusion that termination was in the children's best

---

[2] We note, however, that the trial court properly could—and did—consider petitioner's exhibit that was used to establish a factual basis for respondent's no-contest plea as to jurisdiction and statutory grounds. The investigation summary portion of the exhibit stated that respondent was the primary suspect in the murder of Nelson and included facts linking respondent to that offense. In particular, Nelson disappeared shortly after she reported that respondent had hit her with a bottle and locked her in a closet, her body was found in a garage near respondent's home, and respondent's fingerprints and DNA were found on the materials used to wrap the body.

interests. The testimony at the best interest hearing demonstrated that the home in which respondent lived with the children was unfit for habitation. It had no running water, was illegally connected to utilities and had exposed wires, and was heated by a propane heater with an open flame accessible to the children. The testimony also showed that respondent had an extensive criminal history, including a history of domestic violence against the mothers of the children, which the children witnessed.[3] Finally, there was testimony that the children were making progress in their current placements and receiving required treatment, counseling, and/or rehabilitative services from professionals—services that respondent never sought for them. See *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000). ("If a parent cannot or will not meet [his] irreducible minimum parental responsibilities, the needs of the child[ren] must prevail over the needs of the parent.") (Quotation marks and citation omitted.) Considering respondent's criminal history, his history of depravity and domestic violence, the deplorable conditions to which he exposed the children, and the children's needs for specialized services that respondent made no effort to obtain, the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Affirmed.


/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel

---

[3] In addition, the exhibit introduced to support the factual basis for respondent's no contest plea stated that JJR's and DERK's cheeks were burned with a cigarette (allegedly by Nelson), suggesting that respondent either could not or refused to protect them from abuse. The children also did not receive medical attention for their burns, which further reinforces that respondent either could not or refused to properly care for the children.