*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* D. M. SPEARS, Minor.

UNPUBLISHED
March 30, 2023

No. 362649
Wayne Circuit Court
Family Division
LC No. 2022-000139-NA

*In re* K. M. SPEARS, Minor.

No. 362650[1]
Wayne Circuit Court
Family Division
LC No. 2022-000140-NA

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's orders terminating his parental rights to his two minor children, DS and KS, under MCL 712A.19b(3)(b)(*i*) (parent's act caused injury or abuse), (j) (reasonable likelihood that the child will be harmed if returned to parent), (k)(*iii*) (parent's abuse of child included battering, torture, or other severe physical abuse), (k)(*iv*) (parent's abuse of child included loss or serious impairment of an organ or limb), and (k)(*v*) (parent's abuse of child included life-threatening injury). We affirm.

---

[1] On August 30, 2022, this Court entered an order consolidating these two appeals. *In re D M Spears Minor*, unpublished order of the Court of Appeals, entered August 30, 2022 (Docket Nos. 362649 and 362650).

# I. FACTUAL BACKGROUND

This action arises from respondent's physical abuse of his daughter, DS, who was three months old when the abuse occurred. Respondent is the biological father of both DS and her three-year-old brother, KS.[2] In February 2022, petitioner filed two permanent custody petitions alleging that respondent neglected to care or provide support for DS and KS, and that respondent's home is an unfit place for the children. The petitions alleged that respondent physically abused DS, which resulted in her hospitalization for a plethora of injuries, including a bilateral subdural hematoma, retinal hemorrhages, multiple ligament injuries, and seizures. As for how DS's injuries occurred, the petition noted respondent had given two versions of the incident. Respondent first claimed to have accidentally fallen down the stairs while holding DS. On a separate occasion, respondent said that he accidentally fell asleep with DS next to him on a bed and woke up to find her unconscious, at which point he panicked and fell while running down the stairs with DS in his arms. Petitioner alleged that DS's injuries were indicative of child abuse, and asked the trial court to take jurisdiction over her. Petitioner also asked the court to take jurisdiction over DS's brother, KS, asserting that because of the severity of DS's injuries, it was dangerous for KS to remain in respondent's care.

A two-day trial addressing jurisdiction and statutory grounds for termination was held in April 2022. Dr. Bradley Norat testified on behalf of petitioner. Dr. Norat is a board-certified pediatrician employed at the Children's Hospital of Michigan as the director of the hospital's Child at Risk Evaluation Team. At the time of trial, Dr. Norat had recently sat for the examination to become board-certified in child-abuse pediatrics, but stated that he had previous experience testifying in court in Michigan as an expert in child-abuse pediatrics. Over respondent's objection, the court certified Dr. Norat as an expert in pediatrics and child-abuse pediatrics.

Dr. Norat testified that he examined DS after her treatment at the Children's Hospital of Michigan. Dr. Norat noted that DS suffered seizures, required a breathing tube, and had to have fluid drained from her brain. On the basis of lab images and test results, Dr. Norat concluded that DS's injuries were the result of "hyperflexion," which he described as the forceful pushing of an individual's neck downward so that the chin touches the chest. Dr. Norat explained that this movement can be caused by forceful shaking, and testified that the trauma DS experienced was "100 to 1000 times more likely in abusive inflicted trauma rather than accidental trauma." Dr. Norat expected that DS would suffer long-term physical and cognitive disabilities as a result of her injuries.

Regarding the petition relating to KS, KS's mother testified that on two occasions, KS returned from weekend visits with respondent with various injuries, including a split lip and redness around his neck. KS's mother testified that she asked respondent about the injuries, but that he would either tell conflicting stories about where the injuries came from, or would alternatively decline to answer. KS's mother stated that she was concerned about KS being around respondent. Ultimately, the trial court found grounds for taking jurisdiction over the children, and

---

[2] DS and KS do not share a mother. The children are in the custody of their respective mothers, who were not named as respondents in the proceeding below.

further concluded that statutory grounds existed to terminate respondent's parental rights to both children under MCL 712A.19b(3)(b)(*i*), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).

In June 2022, the trial court held a best-interests hearing. At the hearing, DS's mother testified that as a result of respondent's actions, DS had lost sight in both of her eyes. DS's mother stated that she was no longer in a relationship with respondent, but that in April 2022, respondent came to her house and engaged in a heated and physically assaultive argument with her while DS was present. DS was recovering from the January 2022 incident at the time. KS's mother also testified, stating that KS was fearful of respondent, refused to eat in his presence, and was unhappy when he came home from visits with respondent. Because aggravated circumstances were involved in this case, see MCL 722.638, DHHS did not provide services to respondent. *In re Rippy*, 330 Mich App 350, 355-356; 948 NW2d 131 (2019).

Following the close of testimony, the trial court reiterated that statutory grounds existed to support terminating respondent's parental rights. The court also found that termination of respondent's parental rights was in the children's best interests, and subsequently entered two orders terminating respondent's parental rights to DS and KS, respectively. This appeal followed.

## II. STATUTORY GROUNDS

Respondent first challenges the trial court's conclusion that statutory grounds existed to support terminating his parental rights. We conclude the trial court did not clearly err when it determined petitioner presented sufficient evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).

## A. STANDARD OF REVIEW

A trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence in order to terminate a respondent's parental rights. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's findings regarding the statutory grounds are reviewed for clear error. *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted).

Along with his statutory-basis argument, defendant also raises an issue regarding the certification of petitioner's expert witness, Dr. Bradley Norat. In general, a trial court's qualification of a witness as an expert is reviewed for an abuse of discretion, which occurs when "the decision results in an outcome outside the range of principled outcomes." *Surman v Surman*, 277 Mich App 287, 304-305; 745 NW2d 802 (2007).

## B. CERTIFICATION OF EXPERT WITNESS

Respondent argues the trial court erred by certifying Dr. Norat as an expert in pediatrics and child-abuse pediatrics. We disagree.

MRE 702 governs the certification of expert witnesses, and provides, in relevant part:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In the trial court, Dr. Norat testified that he is a board-certified pediatrician and has been employed at the Children's Hospital of Michigan since 2020. He attended medical school at the Michigan State University College of Human Medicine and completed a child-abuse pediatrics fellowship after five years at the University of Texas Health Science Center. Further, Dr. Norat completed all training for his child-abuse pediatric boards and had sat for board certification in that field. Dr. Norat has also previously testified in court as an expert in both pediatrics and child-abuse pediatrics in Michigan.

Respondent contends that Dr. Norat was not properly certified as an expert in child-abuse pediatrics because he had not yet received board certification in that field when he testified in the trial court. We do not find this argument persuasive. That Dr. Norat was still waiting on his results for his child-abuse pediatric board certification when he testified here does not disqualify him as a child-abuse expert. The court properly assessed Dr. Norat's knowledge, skills, experience, and training, and concluded that he was a qualified expert. Further, there was no evidence presented to suggest Dr. Norat's testimony was not based on sufficient facts or data, nor that his testimony was not the product of reliable principles and methods. MRE 702. Thus, the court was well within its discretion to certify Dr. Norat as a child-abuse expert.

## C. MCL 712A.19b(3)(b)(*i*)

A court may terminate parental rights under MCL 712A.19b(3)(b)(*i*) if it finds by clear and convincing evidence that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse[,] . . . [t]he parent's act caused the physical injury or physical or sexual abuse[,] and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Respondent stated that DS's injuries were accidental and gave two separate explanations for how they happened. At one point, respondent claimed that DS fell out of his arms when he slipped and fell down a flight of stairs, and at another point stated that he fell asleep in the same bed as DS and rolled over on top of her before panicking and falling down the stairs with her in his arms.

On the other hand, petitioner presented evidence that DS's injuries were nonaccidental. Dr. Norat testified that her injuries were caused by intentional hyperflexion and forceful shaking, which resulted in an acute bilateral subdural hematoma, bilateral retinal hemorrhages, bleeding in various layers of her eye, and seizures. In Dr. Norat's expert opinion, the injuries that DS suffered could not have been caused by a simple fall down a flight of stairs or from respondent rolling over on top of her by accident. Instead, Dr. Norat believed that the injuries were the result of severe child abuse. Additionally, it is uncontested that DS's injuries were caused by respondent while she was alone in respondent's care. Thus, we conclude petitioner presented clear and convincing evidence that respondent physically injured DS and that there is a reasonable likelihood she would

suffer from injury or abuse if returned to respondent's care. This statutory ground further applies to KS as a sibling of DS, the child who suffered physical abuse and injury caused by respondent.

## D. MCL 712A.19b(3)(j)

A court may terminate parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." While in respondent's care, DS suffered severe injuries and was hospitalized. Although respondent claimed DS's injuries resulted from a fall down the stairs, Dr. Norat testified DS's injuries were the result of intentional hyperflexion. Additionally, respondent physically assaulted DS's mother in front of DS. The evidence also indicated that KS had been injured while in respondent's care, having returned from respondent's house with a split lip and a bruised neck on two separate occasions. Respondent refused to tell KS's mother how KS received those injuries. Considering these various incidents, we conclude petitioner presented clear and convincing evidence that, based on respondent's conduct, there is a reasonable likelihood DS and KS would be harmed if returned to his care.

## E. MCL 712A.19b(3)(k)(*iii*)

A court may terminate parental rights under MCL 712A.19b(3)(k)(*iii*) if it finds by clear and convincing evidence that the "parent abused the child or a sibling of the child [and] the abuse included . . . [b]attering, torture, or other severe physical abuse." Petitioner presented evidence that as a result of the abuse, DS was hospitalized for treatment of an acute bilateral subdural hematoma, bilateral retinal hemorrhages, bleeding in the various layers of her eye, and seizures. Dr. Norat testified these injuries were nonaccidental and were the result of "abusive inflicted trauma rather than accidental trauma." Because DS was in respondent's sole care the day of the incident, we conclude that respondent caused DS's injuries and that the injuries amounted to "severe physical abuse." This statutory ground further applies to KS because he is a sibling of the child who suffered the physical abuse and would be at risk for the same injuries if returned to respondent's care.

## F. MCL 712A.19b(3)(k)(*iv*)

A court may terminate parental rights under MCL 712A.19b(3)(k)(*iv*) if it finds by clear and convincing evidence that the "parent abused the child or a sibling of the child [and] the abuse included . . . [l]oss or serious impairment of an organ or limb." After examining DS, Dr. Norat described her as "critically ill." DS suffered seizures, was forced to breathe through a breathing tube, and had to have fluid drained from her brain. Dr. Norat also stated DS was likely to suffer long-term consequences from her injuries, including problems with both her physical and cognitive abilities. DS's mother further testified that DS lost sight in both of her eyes following the incident. Thus, we conclude DS suffered serious impairment to several of her organs, including her eyes, brain, and lungs. This statutory ground further applies to KS because he is a sibling of the child who suffered the physical abuse and would be at risk for the same injuries if returned to respondent's care.

-5-

## G. MCL 712A.19b(3)(k)(*v*)

A court may terminate parental rights under MCL 712A.19b(3)(k)(*v*) if it finds by clear and convincing evidence that the "parent abused the child or a sibling of the child [and] the abuse included . . . [l]ife-threatening injury." Petitioner again presented evidence that DS suffered severe injuries while in respondent's care, which Dr. Norat characterized as the result of intentional abuse. Because DS's injuries resulted from deliberate conduct, and because DS was in respondent's sole care the day of the incident, we conclude that respondent abused DS and caused her life-threatening injuries. This statutory ground further applies to KS because he is a sibling of the child who suffered the physical abuse and would be at risk for the same injuries. Thus, the termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(b)(*i*), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).

## III. BEST INTERESTS

Respondent next contends that termination of his parental rights was not in the children's best interests. We disagree, and conclude the trial court did not clearly err when it determined that termination of respondent's parental rights was in the children's best interests under MCL 712A.19b(5).

"Whether termination of parental rights is in the best interest of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. We review the trial court's findings and ruling that termination is in the child's best interests for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). To determine whether termination of parental rights is in a child's best interests, the court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). The trial court may also consider the child's wellbeing while in care and the possibility of adoption. *Id*. at 714 (citation omitted). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

As to DS, petitioner presented evidence that DS suffered severe physical abuse while in respondent's sole care, and that her injuries caused lasting physical impairment. Respondent has been aggressive toward DS's mother and physically assaulted her in front of DS. As to KS, petitioner presented evidence that KS is fearful of respondent, refuses to eat in his presence, and is unhappy after spending time with him. Additionally, KS has returned injured from respondent's house on two occasions, once with a split lip and once with a bruised neck. The children's mothers expressed concern for their children's wellbeing in respondent's presence. Both children are in the care and custody of their mothers, and there is no evidence that respondent shares a bond with

either child. Thus, considering the risk of harm both children are likely to experience around respondent, we conclude the termination of respondent's parental rights is in both DS's and KS's best interests.

Respondent next contends that he should have been given a treatment plan and an opportunity to regain the care and custody of his children. We disagree. Under MCL 712A.19a(2),

> [r]easonable efforts to reunify the child and the family must be made in all cases except if . . . [t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PS 238, MCL 722.638.

Serious physical harm, serious impairment of an organ, and life-threatening injury to the child or a sibling of the child are all considered aggravated circumstances. MCL 722.638(1)(a). The trial court made a judicial determination that respondent subjected DS to serious physical harm, serious impairment of an organ, and life-threatening injury. Because the court determined aggravated circumstances existed, we conclude that petitioner did not have the obligation to make reasonable efforts to reunify respondent with DS and KS.

Respondent also argues there was a less restrictive alternative to terminating his parental rights, given that DS and KS are in their respective mother's custody. However, we agree with the trial court that "the only way to protect these children is [] via full termination of [respondent's] parental rights." DS suffered life-threatening injuries when she was with respondent, and on two occasions, KS returned from respondent's home with injuries that respondent either could not or would not adequately explain. Additionally, evidence presented in the trial court established that respondent was aggressive and physically assaulted DS's mother in front of DS. Thus, we conclude that even if respondent's parental rights were not terminated and the children's mothers retained sole care and custody of their children, DS and KS would still be at a risk of harm. [3]

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica

---

[3] Respondent argues petitioner violated the American with Disabilities Act (ADA), 42 USC 12101 *et seq.*, by failing to accommodate his mental health issues and failing to provide him with services to address these issues. We disagree. "A parent may not raise violations of the ADA as a defense to termination of parental rights proceedings." *In re Terry*, 240 Mich App 14, 25; 610 NW2d 563 (2000).