*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. MATAMOROS, Minor.

FOR PUBLICATION
May 14, 2025
2:53 PM

No. 371544
Wayne Circuit Court
Family Division
LC No. 2018-000423-NA

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, GM, pursuant to MCL 712A.19b(3)(a)(*ii*), (g), and (j). We reverse.[1]

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), filed an initial petition for jurisdiction over, and removal of, GM and five of his siblings in March 2022. The petition alleged, in relevant part, that respondent was GM's legal father; lived in Mexico; reported not having seen or cared for GM since GM "was younger"; had not visited GM, provided financial or material support for GM, or provided for GM's care or supervision since July 2016; and had a criminal history. Prior to filing the petition, Children's Protective Services (CPS) worker, Alyssa Harris, spoke to respondent in January 2022 and February 2022. At that time, respondent confirmed having a Michigan address and stated that he would be willing for care for GM if GM was removed from his mother's care. However, after the petition was filed, Harris reported that respondent's phone number would no longer connect when she called, she was unaware of

---

[1] The trial court also terminated the rights of GM's mother as to GM and five of GM's siblings, as well as the putative fathers of several of GM's siblings. However, neither GM's mother nor the other children's putative fathers appealed, and respondent is only the father of GM. We have therefore omitted facts about the mother, putative fathers, and GM's siblings that are not directly relevant to the termination of respondent's parental rights to GM.

-1-

respondent's whereabouts, and respondent had not made any plans to care for GM. GM was initially placed with his maternal grandmother pursuant to a safety plan, then was placed by petitioner with his paternal aunt, Annarosa Mata.

Respondent did not have any contact with petitioner again until January 2023. Foster care supervisor Rebecca Rodriguez spoke to respondent on the phone about meeting with her to discuss a case service plan. She indicated that respondent replied that he was not ready to participate in a case service plan and needed to work on himself first. Respondent also reported that he was back in the United States to take care of an outstanding bench warrant.[2] Rodriguez encouraged respondent to appear for a hearing that was coming up in January, but respondent did not appear. Rodriguez spoke to respondent again in March 2023, at which time respondent again declined to participate in services and then failed to attend a March 2023 hearing that Rodriguez encouraged him to attend.

In September 2023, petitioner filed a supplemental petition to terminate respondent's parental rights to GM on the basis of abandonment. The petition alleged, in relevant part, that respondent had not maintained contact with the foster care worker; respondent terminated attempted phone calls by petitioner; petitioner sent letters to respondent's last known address but did not receive a response; respondent did not appear at petitioner's office or attend any visits with GM; respondent had not provided for GM's care or supervision, or provided financial or material support for GM since April 19, 2022; respondent failed to appear at any of the trial court proceedings despite being provided with the necessary information to attend; and respondent failed to benefit from court ordered services.

Respondent made his first appearance at a November 17, 2023 bench trial on the supplemental petition and continued attending the remaining lower court proceedings, including after he became incarcerated[3] sometime in December 2023. The trial court held a continued bench trial and hearing as to statutory grounds for termination on January 12, 2024, at which it heard testimony from foster-care worker Bree Anna LaVere, Rodriguez, and respondent. LaVere confirmed that she had contact with respondent for several weeks before he became incarcerated. She testified that she offered visitation with GM during that time, but respondent declined and stated that he did not want to visit GM before being incarcerated because "he wanted to work on himself." She further testified that petitioner intended to place GM with his maternal aunt, Marasala Vasquez, because of some behavioral issues GM exhibited in Mata's home. She testified that Vasquez was willing to adopt GM but not willing to participate in a guardianship. LaVere further confirmed that respondent had not been given a case service plan prior to being incarcerated. She denied knowing whether there were services available for respondent while he was incarcerated. She admitted that if there were parenting classes or individual therapy available where he was incarcerated, then he could participate. The trial court determined that statutory grounds existed to terminate respondent's parental rights to GM.

---

[2] Respondent was living in Mexico at some point during the pendency of this case, although the record is unclear as to exactly when or for how long.

[3] Respondent was incarcerated for attempting to burn down his ex-girlfriend's house.

The trial court held a best-interests hearing on April 18, 2024, at which it again heard testimony from LaVere and respondent, as well as respondent's mother and sister. Respondent testified that he wanted to take care of his outstanding warrants, complete his prison time, and then get custody of GM. He further stated that he wanted to participate in parenting programs while incarcerated and that he would participate in any programs that petitioner put him in in order to get custody of GM. Respondent, his mother, and his sister, all testified that respondent was visiting with GM prior to his incarceration.

LaVere testified that GM was placed with Vasquez in January 2024 and that Vasquez was willing and able to adopt GM and provide long-term, permanent, and stable care for him. LaVere also testified that she was "unable to do anything with a treatment plan for [respondent]" because he was incarcerated. However, LaVere did not learn whether there were any programs at the prison for respondent. LaVere did not believe that respondent had a bond with GM based on his lack of involvement in the case between April 19, 2022 and November 17, 2023. The trial court determined that termination of respondent's parental rights to GM was in the child's best interests, despite his relative placement.

This appeal followed.

## II. REASONABLE REUNIFICATION EFFORTS

Respondent claims the trial court erred by determining that petitioner made reasonable efforts toward reunifying respondent and GM. We agree.

In order to preserve an argument regarding reasonable reunification efforts, a respondent must object to the services at the time that they are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id.*, quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022).

In this case, petitioner never created a case service plan for respondent, so respondent never had the opportunity to object. This was clearly established at the continued bench trial and hearing as to statutory grounds for termination on January 12, 2024, when, in response to questioning by respondent's attorney, LaVere confirmed that respondent was not given a case service plan. Respondent's attorney also questioned LaVere as to whether there were services that respondent could participate in while incarcerated and her response was, "I do not know at this time." After confirming that respondent was not given a case service plan, respondent's attorney argued during her closing that respondent wanted a case service plan and an opportunity to benefit from the provided services. She further argued that respondent loves GM, has a bond with GM, was seeing GM, and was willing to participate in any services that were offered as part of the case service plan. On January 16, 2024, the trial court entered an order following the statutory-grounds hearing in which it found statutory grounds to terminate respondent's parental rights, but did not address reasonable efforts. However, in its April 22, 2024 order terminating respondent's parental rights, the trial court rejected respondent's argument by checking the box indicating that reasonable

efforts were made to preserve and unify the family. Whether respondent was provided reasonable efforts was thus raised by respondent in the trial court, and that court rejected the argument. Therefore, this issue is preserved.

This Court reviews a trial court's findings regarding reasonable reunification efforts for clear error. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted).

"The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)," *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019), none of which were raised by petitioner in the present case. "This means petitioner must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Atchley*, 341 Mich App at 338-339 (quotation marks and citation omitted). "While the [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Id*. at 339 (quotation marks and citation omitted; alteration in original). "Not only must [the] respondent cooperate and participate in the services, she [or he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Here, petitioner did not prepare, and the trial court did not adopt, a service plan for respondent. Petitioner's supplemental petition alleged that respondent "failed to benefit from his court ordered services." This allegation is clearly not true since there were no services ordered for respondent and as a result, respondent was never obligated to comply with or benefit from services. Case workers admitted to communicating with respondent prior to filing the original petition and then again prior to his incarceration. Once incarcerated, LaVere admitted that she did not look into services that were available to respondent. Respondent allegedly participated in mental health services and leadership programs, completed domestic violence counseling, and was on a waiting list for parenting classes. LaVere denied knowing whether respondent participated in these programs. Further, respondent testified that he was willing to participate in any program that petitioner could get him into while incarcerated. Petitioner's failure to fulfill its statutory duty to prepare a case service plan as part of its reasonable reunification efforts constituted clear error requiring reversal.

Petitioner argues in its response brief on appeal that "it was [respondent's] failure to participate in and benefit from the services that caused termination of his parental rights, not any failure on the part of DHHS." Petitioner places blame on respondent for not participating in a case service plan that petitioner never created, and emphasizes the difficulty that petitioner had maintaining contact with respondent due to his living in Mexico. It is unclear from the record when respondent lived in Mexico, or for exactly how long. Respondent testified that he lived in Mexico for two years, and, though he did not know exactly when he went to Mexico, he believed he did so about two years before the January 2024 bench trial. Respondent's sister testified that respondent went to Mexico sometime before April 2022 and returned in December 2022.

Respondent's mother believed that respondent went to Mexico sometime in 2021 and returned in 2022. However, as previously mentioned, respondent denied living outside Michigan and confirmed his address was located in Pontiac, Michigan when Harris spoke to him on the phone in January 2022. There is no indication that respondent told Harris that he lived in Mexico when he called her again in February 2022. Respondent admitted that he received certified mail informing him of the proceedings in this case about a week or two prior to the November 2023 bench trial date. Also, as stated previously, Harris was in contact with respondent prior to filing the original petition in January and February 2022, Rodriguez spoke to respondent in January and March 2023, and LaVere admitted to communicating with respondent in the several weeks before he became incarcerated in December 2023. Thus, petitioner had numerous opportunities to implement a case service plan had one been created.

Respondent also briefly claims on appeal that petitioner failed to comply with the requirement to provide specialized services to respondent pursuant to *In re Hicks*, 500 Mich 79; 893 NW2d 637 (2017).

In *Hicks*, our Supreme Court concluded that "efforts at reunification cannot be reasonable under the Probate Code if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the [Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.]" *In re Hicks*, 500 Mich at 86. The *Hicks* Court acknowledged that the DHHS "cannot accommodate a disability of which it is unaware," but noted that the DHHS was clearly aware the respondent in that case had a disability. *Id*. at 87. According to the *Hicks* Court, "[o]nce [the DHHS] knew of the disability, its affirmative duty to make reasonable efforts at reunification meant that it could not be passive in [its] approach . . . as far as the provision of accommodations is concerned." *Id*. at 87-88 (quotation marks and citation omitted; third alteration and omission in original).

Here, respondent claims that petitioner failed to fulfill its obligation to provide respondent specialized services in light of his "mental health disability." The investigation report indicates that, on January 27, 2022, respondent reported to the initial foster-care worker that he had ADHD, anxiety, and bipolar disorder. At the best-interests hearing, respondent testified that he had mood swings, anxiety, and ADHD; saw a psychiatrist; and took medication that helped with his anxiety and mood swings. Respondent further testified that he received supplemental security income in connection with his anxiety and ADHD.

As previously discussed, petitioner did not provide respondent any services. On remand, petitioner must provide respondent with a case service plan that reasonably accommodates respondent's disabilities as required under the ADA.

## IV. CONCLUSION

The order terminating respondent's parental rights is reversed. Remanded for petitioner to create and implement a case service plan for respondent that reasonably accommodates respondent's disabilities as required under the ADA. The case service plan must be presented to the trial court prior to an order of disposition, and the court then "may order compliance with all

or any part of the case service plan as the court considers necessary." MCL 712A.18f(4). We do not retain jurisdiction.[4]

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

---

[4] Due to our conclusion, we need not address respondent's arguments as to best interests. However, we note that respondent mistakenly argues in his brief on appeal that guardianship for GM was available due to GM's placement with Mata. At the time of trial, Mata was no longer caring for GM. GM was placed with Vasquez, who was willing to adopt GM but was not willing to participate in a guardianship.